Bunting v. Hromas.

---

ARCHER M. BUNTING, APPELLEE, v. LEWIS HROMAS ET AL., APPELLANTS.

FILED MARCH 27, 1920. No. 21346.

1. Wills: DEVISE: PERPETUITIES. An executory devise of a life estate in land to E. A. B. living at time of testator's death, a determinable estate over to A. not living at time of testator's death conditioned that if A. dies without issue the reversion to go to the legal heirs of the testator, is within the rule against perpetuities, namely, the longest possible period for vesting of an executory estate is the life or lives in being and 21 years thereafter, to which may be added the ordinary period of gestation for the case of posthumous children. In such case, A. takes the entire estate free from the burden of the reversion.

2. ———: Construction: Perpetuities. In determining whether
a given case is within or without the rule against perpetuities, the
court is guided by what is possible to occur under the will, rather
than what did occur.

3. ———: ———: ———. Where a will contains provisions which
violate the rule against perpetuities, it will not be set aside *in
toto*, but will be carried out in so far as it is legal to do so. The
rule against perpetuities only cuts off the estates which are to take
effect beyond the period limited by the rule. In such case, the
last taker within the rule would take the entire estate.

Appeal from the district court for Butler county:
Edward E. Good, Judge. *Affirmed.*

*Hastings & Coufal,* for appellants.

*Archer M. Bunting, contra.*

Day, J.

This is an appeal by the defendants from a decree of
the district court for Butler county compelling specific
performance of a land contract.

By appropriate pleading the plaintiff alleged his sei-
sin in fee of the S. W. ¼ of section 20, township 13,
range 3 east, in Butler county, Nebraska; the execution
of the contract; the full performance of its terms on his
part; and the refusal of the defendants to perform.

The answer is so framed as to raise solely the mer-
chantability of the plaintiff's title in so far as it rested
in the provisions of the will of one Alonzo Barnes and
subsequent conveyances thereunder; the contention be-
ing that there was outstanding contingent remainders
in the heirs at law of Alonzo Barnes created by the pro-
visions of the will which have not been legally barred,
released or surrendered to the plaintiff.

The facts are stipulated, and such as are necessary to
understand our conclusions will appear throughout the
opinion.

On October 3, 1897, Alonzo Barnes, a resident of Lan-
caster county, Nebraska, died testate, seised in fee of
several tracts of land and city lots, among which were

the premises above described and the subject of this controversy. On January 8, 1898, the will of the testator was duly and regularly admitted to probate, and a decree entered establishing as heirs at law the following named children of the testator, with their respective ages, as follows: Harriet M. Cooper, age 35; Julia Pfanstiehl, age 33; Emma M. Sheffield, age 31; Edwin Alonzo Barnes, age 29; and Ora L. Barnes, age 23. By separate clauses of his will the testator devised to each of his children above named specifically described real estate. To the daughter Ora was devised city lots, to each of the other children farm property. The devising clauses of the will to his four children, Harriet, Julia, Emma, and Edwin Alonzo, were couched in identical language, except as to name and description of the property, and the use of the pronoun. In the devise to Ora, the words "and to her children," which followed the name of the devisee in each of the other cases, were omitted. The devise to the testator's son was as follows: "I also give and bequeath to my beloved and only son, Edwin Alonzo Barnes, and to his children, all of the S. W. ¼ of section 20, in township 13, range 3 east, Butler county, Nebraska." A later clause in the will provides: "It is also my will in case either of my children hereinbefore mentioned by name, shall die before their companion (husband or wife), and their children also die without issue, that the real estate herein willed to said child of mine, shall, at the decease or remarriage of the said companion (husband or wife), revert back to my own legal heirs, instead of to the heirs of my son-in-law or daughter-in-law." At the time of the probate of the will the testator's son and his daughter Ora were unmarried. Subsequent to the probate of the will, and during August and September, 1904, the four daughters of the testator, with their respective husbands (the daughter Ora, since the probate of the will, having married one Tuttle), joined in the execution and delivery of a quitclaim deed purporting to convey the premises in

controversy to Edwin Alonzo Barnes, the said convey-
ance containing the recital that the grantors in said deed
were the heirs at law of Alonzo Barnes, the considera-
tion of the conveyance being the reciprocal conveyance
by each of the five heirs at law of Alonzo Barnes, re-
leasing any interest that they might have in the prem-
ises that were previously devised by the will of Alonzo
Barnes to each of his said children. Subsequent to the
probate of the will, Edwin Alonzo Barnes married, and
on August 25, 1898, he and his wife, Lulu M. Barnes,
executed and delivered a quitclaim deed to the premises
now in controversy to Alonzo D. Wilkinson, and on the
following day the said Alonzo D. Wilkinson made, exe-
cuted and delivered a quitclaim deed to the same prem-
ises to Lulu M. Barnes. On September 10, 1904, Lulu
M. Barnes and her husband, Edwin Alonzo Barnes,
executed and delivered a warranty deed to the said
premises to C. H. Eubank, and on October 7, 1904, the
said Eubank and his wife executed and delivered a war-
ranty deed to the premises in controversy to Anna M.
Bunting, and on February 4, 1910, the said Anna M.
Bunting and her husband executed and delivered a war-
ranty deed to said premises to the plaintiff. Edwin
Alonzo Barnes died October, 1908, leaving surviving
him his widow, Lulu M. Barnes, and a minor son, Alonzo
Barnes; this son has reached his majority, and on Au-
gust 4, 1919, executed and delivered to the plaintiff a
quitclaim deed to the said premises. Each of the above
mentioned conveyances, as well as the probate proceed-
ings, are reflected in the abstract submitted by the plain-
tiff to the defendants before October 1, 1919, the date
designated in the contract for closing the deal.

At the outset of the case, and as a basis for our de-
termination of the question involved, it is necessary for
us to construe this singularly phrased will. The deci-
sions of the courts are numerous as to the legal and
technical meaning of words usually employed in wills,
and in some of the states some fine distinctions and re-

finements have been made. These decisions are of but little value in this state in the construction of wills, as we are now committed to the doctrine that the intention of the testator is to be ascertained from a liberal interpretation and comprehensive view of all of the provisions of the will. No particular words or conventional forms of expression are necessary to make a valid will. The court without much regard to canons of construction or technical language will place itself in the position of the testator, ascertain his will, and enforce it in all its parts, if it be lawful to do so. *Weller v. Noffsinger*, 57 Neb. 455; *Grant v. Hover*, 103 Neb. 730. Viewing this will in all its parts, it seems fairly certain that the underlying thought in the mind of the testator was a desire that his property should be kept in his own family, and that it should descend along the line of his own blood, and not otherwise. We think the clause of the will, ''I give and bequeath to my beloved and only son Edwin Alonzo Barnes and to his children,'' when considered in connection with the later clauses, must be construed to give the testator's son a life estate only, and that the words ''and to his children'' must be considered as words of purchase; that it was the intention of the testator that, if children be born to the son Edwin Alonzo, they should take direct under the will, and not through their father Edwin Alonzo. Construing the will further, it would seem that the testator did not desire that the children of Edwin Alonzo should take the fee title except on condition of issue born to such children, and upon the failure of issue the fee should, in the language of the will, ''revert back to my own legal heirs.'' Apply this construction of the will to the facts of the case before us, and this situation is presented: The son of the testator, Edwin Alonzo, living at the time of the testator's death, took a life estate in the premises. On the death of Edwin Alonzo, in October, 1908, his son Alonzo, not in being at the time of the testator's death, took a qualified estate in the premises. This qualified estate

became an absolute fee on the contingency of issue born to Alonzo, and in the event of the death of Alonzo the estate was to revert to the legal heirs of the testator. In this analysis we have not considered the interest of the widow of Edwin Alonzo, as it is not necessary in the view we have taken of the case. In any event, her rights would be terminated by her deed.

The question then arises: Does the will in whole or in part contravene any provisions of the established law? We think it does. In part at least it runs counter to the well-established doctrine of the common law preventing the creation of perpetuities by will. The common-law rule, which is a part of the law of this state, provides that the longest possible period for vesting an executory estate is the life or lives in being and 21 years thereafter, to which may be added the ordinary period of gestation. 2 Reeves, Real Property, secs. 956-973. In construing this rule, whether an exccutory devise falls within or without the operation of the law, it must be viewed in the light of what might possibly occur, rather than by what did occur, and its validity must be determined as of the time of the testator's death. 2 Reeves, Real Property, secs. 961, 962. There is some division of authority as to the effect of a failure of a gift because it violates the rule against perpetuities. We are inclined to adopt the view that the will of the testator is not to be set aside in toto because some of its provisions violate the rule against perpetuities, but is to be carried out as far as it is legal to do so, and that the rule against perpetuities only cuts off the estates which are to take effect after the prescribed period. In such case the last taker within the rule would take the entire estate, and those devises outside of the rule would be held to be void ab initio. See note under Saxton v. Webber, 20 L. R. A. 509 (83 Wis. 617). A simple illustration from the facts in the case and the possibilities thereunder is sufficient to establish that the contingent remaindermen fall

within the inhibition of the rule against perpetuities as hereinbefore announced. The first taker, Edwin Alonzo, died in 1908. His son, Alonzo, the second taker, has entered upon the enjoyment of his qualified estate. He might live for a period of 50 or 60 years in the enjoyment of this estate, and then die without issue, in which event the property under the will was to go to the testator's legal heirs. The contingent right of the remaindermen would thus be postponed to a period long beyond the life in being, Edwin Alonzo, and 21 years thereafter. In such case the rights of the remaindermen must be held to be void *ab initio,* and that the second taker under the will, Alonzo, took the entire estate. It would necessarily follow from what has been said that the deeds executed by Edwin Alonzo Barnes, and his wife, Lulu M. Barnes, and the subsequent deed from Alonzo Barnes to the plaintiff would vest a merchantable title in the plaintiff to the premises described, based upon the will of the testator, Alonzo Barnes. In addition to the deeds just above mentioned, the daughters, heirs at law of the testator, with their respective husbands, have also united in a deed which has ultimately merged in the plaintiff. It seems to us, from any view point that might be taken, the entire title passed under the will of the testator is merged in the plaintiff in this action.

The decree of the district court is right, and is

AFFIRMED.