No. 34,677

ROSALIE BEVERLIN et al., *Appellants*, v. THE FIRST NATIONAL BANK IN WICHITA, as Executor, etc., *Appellee.*

(98 P. 2d 200)

Opinion field January 27, 1940.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellants.

*Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, A. M. Buzzi* and *Paul Donaldson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This action was for a declaratory judgment to construe a will and determine the rights of the legatees and devisees thereunder. It is contended the will is void for the reasons (1) the limitations therein violate the rule against perpetuities, and (2) that it creates an indestructible trust. The appeal is from that judgment.

The will of Fred A. Beverlin was executed December 3, 1926. By a codicil dated February 7, 1930, the defendant The First Na-

tional Bank in Wichita was substituted as executor and trustee in the place of parties named in the original will.

The testator died February 23, 1939, leaving his widow Rosalie Beverlin, and his two daughters Bessie Beverlin Sullivan (mentioned in the will as Bessie Margaret Beverlin) and Lexie Beverlin Fitz-Gerald (mentioned in the will as Lexie Rosalie Beverlin). In 1939 the daughter Bessie was thirty-three years of age and the daughter Lexie was twenty-seven years of age.

The plaintiff Beverly Bess Sullivan is an adopted daughter of Bessie Beverlin Sullivan and was four years of age in May, 1939.

The plaintiff Frances Lexie Fitz-Gerald is a natural child of Lexie Beverlin Fitz-Gerald, and was one year of age on the 28th day of March, 1939. As the testator died on the 23d day of February, 1939, this grandchild was almost one year of age at his death.

The will is a wordy document, but the general scheme of the testator may be compressed into a small compass.

The testator devised and bequeathed one-third of all his property, real and personal, to his wife Rosalie Beverlin absolutely.

One-third of all his property, real and personal, was given to his daughter Bessie Margaret Beverlin, and one-third to his daughter Lexie Rosalie Beverlin. Except as qualified by subsequent provisions, the language was apt to give a fee simple in the land and an absolute interest in the personal property.

The property so devised and bequeathed to the daughters was to be held by a trustee upon active trust until the daughters should attain the age of forty years, respectively, at which time the principal share of each with accruals should be paid to them.

Paragraph nine provided for the handling of the trust property and allowances to be made to the daughters. The divesting clauses, which give rise to the main dispute, read as follows:

"Tenth: It is my will and I direct that in the event of the death of either one of my said daughters without legitimate child or children of their body, that her share of my estate held in trust by the aforementioned trustees, shall automatically revert to and become the property to be held in trust for the other living daughter and be handled in the same manner as the original trust governing the original beneficiaries and be turned over to the daughter surviving at the time the forty-year-of-age trust period would have expired had the deceased daughter lived.

"Eleventh: It is my will and I direct that in case of the death of either of my said daughters leaving legitimate child of their body, that the inheritance from my daughter leaving such child shall be administered according to the terms of this trust until the period when said daughter would have arrived at

the age of forty years, has terminated, provided said child or children have arrived at the age of twenty-five years. In case any child or children of either of my deceased daughters shall not have reached the age of twenty-five years, his or her portion of said estate shall be held in trust until such time as the age of twenty-five years is reached, under the same terms and conditions as govern the mother's estate."

From a study of these two paragraphs it is clear the testator meant that if either daughter should die before she attained the age of forty years, then her property was to be divested and, if she left no children, to go to the surviving daughter, but if she left children, then to such children when they attain the age of twenty-five. Upon the death of a daughter, if she left children, the trust was to continue until the period when the children of such daughter attained the age of twenty-five. The grandchildren were to take through the medium of the trustees, and as the trust was to terminate as each daughter attained the age of forty, the meaning of the testator is clear that the interest of the daughters was to be divested only upon their death before the age of forty, and not upon their death at any time. In other words, when each daughter arrives at the age of forty, her interest becomes indefeasible, the trust as to her interest will terminate, and the divesting clauses in paragraphs ten and eleven will cease to operate. Her interest then becomes an absolute legal interest.

It is urged in support of the will that upon the birth of a grandchild, such child takes a vested interest and the rule against perpetuities has no concern with vested interests. This contention, pressed upon us with vigor, deserves a fair answer, and several suggestions may be made.

(a) The gift under paragraph eleven is only to the grandchildren who attain the age of twenty-five. No grandchild who does not attain that age is an object of the testator's bounty.

The gift to the grandchildren was not a remainder, but an executory devise. Under paragraphs three and four, each daughter took an undivided one-third of the land in fee simple and an absolute interest in one-third of the personal property. There cannot be a remainder after a fee simple. A remainder succeeds a prior interest —usually a life estate. An executory gift cuts short a prior interest before its normal termination and usually shifts such interest to a third person. A remainder may vest in interest before it vests in possession, but that capacity is denied to executory interests. Thus if A transfers land to B for life, remainder to C and his heirs, B has

an estate for life vested in possession, and C has a remainder in fee vested in interest. But if A transfers land to B and his heirs, and should B die without issue living at the time of his death, to C and his heirs, the interest of C is not a remainder but an executory interest. It is to arise on an uncertain event—the death of B without issue at his death. The same event that divests B's interest, gives C title and possession. C's interest is subject to a condition precedent. All executory interests (except one variety, not here important) arise upon an uncertain event, hence are contingent. Thus, while remainders may vest in interest before they vest in possession, executory interests do not, by their very nature, have that capacity. As the grandchildren take, if at all, by way of the executory devise, their interest is necessarily contingent.

(b) It could be argued, however, that each grandchild living at the death of the testator would acquire a vested interest at the age of twenty-five subject to open and let in others who attain that age. (See 51 Harvard Law Rev., p. 1329, hereinafter noted.) But such interests are not vested within the meaning of "vested" under the rule against perpetuities. As stated by Simes in his admirable work on Future Interests, section 499: "A class gift is considered as a single gift. Hence it is all good or all bad under the rule. We may therefore lay down the rule that a class gift is not regarded as vested, for the purpose of the rule against perpetuities, as long as the maximum membership of the class is not ascertained." The gift to the grandchildren is therefore contingent, although there was a grandchild alive at the death of the testator.

With these considerations in mind, we proceed to examine the several questions submitted.

1. Does the gift to the grandchildren in paragraph eleven violate the rule against perpetuities?

The rule against perpetuities, as stated by Gray, Perpetuities, 3d ed., section 201, is as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." The common-law rule, as stated by Gray, is in force in this state. In *Keeler v. Lauer*, 73 Kan. 388, 85 Pac. 541, it was said:

"Having no statute on the subject, the common-law rule prevails, under which the contingent interest must become vested within a life or lives in being and twenty-one years afterward, to which, under some circumstances, is added the period of gestation." (p. 393.)

See, also, *Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682; *Lasnier v. Martin,* 102 Kan. 551, 171 Pac. 645.

The rule against perpetuities is applicable to equitable interests as well as legal interests. An intended trust is invalid unless there is a beneficiary who is definitely ascertained within the time specified in the rule. If an intended trust is created for several beneficiaries, and the interests of one or more of them will not necessarily vest within the period of perpetuities, the trust fails so far as those interests are concerned. (Restatement, Trusts, sec. 62, comment *k.*)

The gift to the grandchildren of the testator in paragraph eleven is a class gift—a group capable of future change in number. It is not a gift to the grandchildren as specific individuals, but to them as members of a fluctuating group. In Gray, Perpetuities, it is said:

"§ 369. There is often a gift to a class of persons, for example, to the grandchildren of a testator upon a contingency which may happen beyond the limits of the rule against perpetuities; as, for instance, a bequest of money to be divided among those of the testator's grandchildren who reach twenty-five. Such a gift is bad, although the testator has grandchildren living at his death. For although, if the living grandchildren reach twenty-five, they must do so during lives in being at the testator's death, namely, their own lives, yet as they may all die before reaching twenty-five, the class may ultimately be composed of grandchildren not born at the testator's death, and the bequest may therefore vest more than twenty-one years after the end of all lives then in being.

"§ 373. Assuming then that the devise is not to vest until the remote period, the devise to the whole class is bad; and it is immaterial that some persons are *in esse* who, should they reach twenty-five, would be entitled to share, for none of them may reach twenty-five, and the whole class may ultimately be composed of persons who are not born at the testator's death. This seems to have been first ruled by Lord Kenyon in *Jee v. Audley* (1787); but the most important case is *Leake v. Robinson* (1817), in which Sir William Grant, M. R., held that the whole gift was void, and so the law has stood ever since."

In the case before us one grandchild was nearly one year old at the death of the testator. If she ever attained the age of twenty-five it would be during her life—a life in being. (The same would be true of any number of grandchildren alive at the death of the testator.) But the gift was to the grandchildren as a class, and the rule in *Leake v. Robinson* (1817), 2 Mer. 363, the leading case on this question, is that if the interest of any potential member of a class can by any possibility vest too remotely the entire class gift fails. While this rule has been followed in England and America by the courts and has been approved by the text writers, it has not escaped criticism.

In *Leake v. Robinson* it was stated: "Perhaps it might have been as well if the courts had originally held an executory devise transgressing the allowed limits to be void only for the excess, where that excess could, as in this case it can, be clearly ascertained." (p. 389.) This suggestion was followed in New Hampshire. In *Edgerly v. Barker*, 66 N. H. 434, 31 Atl. 900, the gift was to grandchildren when the youngest member should reach forty. The court, in an opinion by Chief Justice Doe, held the fund should be]distributed to the grandchildren when they reached twenty-one. (See Gray, Perpetuities, §§ 857-893.) While this case has not been followed by the courts, a similar rule is now in force in England by statute. (Law of Property Act, 1925, 15 Geo. V, ch. 20, § 163.)

But the most vigorous assault on the class-gift rule announced in *Leake v. Robinson* was made by Prof. W. Barton Leach in "Perpetuities and Class Gifts" in 51 Harvard Law Review, 1329.

Notwithstanding these divergent views, we think the rule in *Leake v. Robinson,* as stated in Gray, Perpetuities, *supra,* having been followed by the courts of England and America for a century, has become an integral part of the common-law rule, and if a change is to be made it must be made by the legislature.] *Leake v. Robinson* was decided in 1817 and it was not until the case of *Cadell v. Palmer,* 1 Cl. & F. 372, decided in 1833, that it was determined the twenty-one-year period could be a period in gross without reference to the majority of any person. The class-gift doctrine became a part of the rule in the making.

We hold the gift to the grandchildren in paragraph eleven is too remote and therefore void.

2. Does the failure of the intended trust for the grandchildren destroy the prior gift to the children?

In Gray, Perpetuities, § 247, the general rule is stated thus:

"§ 247. (1) *Effect on Prior Limitations.* If future interests created by any instrument are avoided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument. Thus, if an estate is given to A for life, remainder to his children and their heirs, but, if the children all die under twenty-five, then to B and his heirs, the limitation to B is too remote, and the children of A take an indefeasible fee simple. The cases illustrating this are innumerable. So when there is a devise on a remote condition, and no prior devise, the land descends to the heir who has an indefeasible fee."

The question was before this court in the recent case of *Blake-Curtis v. Blake,* 149 Kan. 512, 89 P. 2d 15. We there held, as stated in paragraph three of the syllabus:

"Where one provision of a will is invalid because it violates the rule against perpetuities, and the testamentary scheme of the testators can be determined and carried out regardless of the void provision, that provision will be stricken out and the testamentary plan given effect."

See, also, *Dreisbach v. Spring,* 93 Kan. 240, 144 Pac. 195.

The general rule is that where an attempted ultimate executory interest fails in its inception because of the rule against perpetuities, the prior interest becomes indefeasible.

*Proprietors of the Church in Brattle Square v. Moses, Grant and others,* 69 Mass. 142; *Farnam v. Farnam,* 83 Conn. 369, 77 Atl. 70; *Cody v. Staples,* 80 Conn. 82, 67 Atl. 1; *Nevitt v. Woodburn,* 190 Ill. 283, 60 N. E. 500; *Howe v. Hodge,* 152 Ill. 252, 38 N. E. 1083; *Beall v. Wilson,* 146 Ky. 646, 143 S. W. 55; *Sears v. Putnam,* 102 Mass. 5; *Smith v. Muse,* 134 Miss. 827, 98 So. 436; *Bunting v. Hromas,* 104 Neb. 383, 177 N. W. 190; *Smith v. Townsend,* 32 Pa. St. 434; *Saxton and husband v. Webber and others,* 83 Wis. 617, 53 N. W. 905.

Also, it is to be observed that where an estate in fee simple determinable is followed by an executory gift which is too remote, many well-reasoned cases hold that the prior interest is not destroyed. Thus, in *First Universalist Society v. Boland,* 155 Mass. 171, 29 N. E. 524, land was conveyed to a church so long as devoted to the uses of certain religious doctrines, then over to others. The gift over was too remote, but the church was held to have an estate in fee simple determinable—when no longer used for specified purposes it would revert to the grantors, or his heirs.

See, also, *Leonard v. Burr,* 18 N. Y. 96; *Institute for Savings v. Home for Aged Women,* 244 Mass. 583, 139 N. E. 301; *Yarbrough v. Yarbrough,* 151 Tenn. 221, 269 S. W. 36.

See Restatement, Property, § 229. Also, page 34 of Appendix to Vol. 2, Restatement, Property.

The failure of the gift to the grandchildren does not affect the validity of the prior interests vested in testator's daughters.

3. It is also urged that apart from the rule against perpetuities, the will is void because it "violates the rule against the undue postponement of direct enjoyment." Does the will attempt to create an indestructible trust? The rule, as stated by Gray, Perpetuities, § 120, is:

"A result of the invalidity of restraints on alienation calls for attention in connection with the rule against perpetuities. When a person is entitled absolutely to property, any provisions postponing its transfer or payment to him

is void. Thus, suppose property is given to trustees in trust to pay the principal to A when he reaches thirty. When any other person than A is interested in the property, when, for instance, there is a gift over to B if A dies under thirty, the trustee will retain the property for the benefit of B; but when no one but A is interested in the property, when, should he die before thirty, his heirs or representatives would be entitled to it, when, in short, the direction for postponement has been made for A's supposed benefit, such direction is void, in pursuance of the general doctrine that it is against public policy to restrain a man in the use or disposition of property in which no one but himself has any interest."

The case of *Claflin v. Claflin*, 149 Mass. 19, 20 N. E. 454, is usually cited on this question. In that case the testator bequeathed funds in trust and directed the trustees to pay $10,000 to his son at twenty-one, the same sum at twenty-five, and a like amount at the age of thirty. When the son attained twenty-one he demanded not only the amount then due but also the deferred payments. The court refused to terminate the trust.

This ruling was contrary to the long-established English rule. *Saunders v. Vautier*, 4 Beav. 115. Although the cases are by no means uniform, the rule in *Claflin v. Claflin* has been followed in some states. Griswold, Spendthrift Trusts, § 513; Simes, Future Interests, § 557.

This question does not seem to have been directly passed on by this court, nor do we think we are called upon to decide the point in this case. The gift over in paragraph ten is valid and we think the continuance of the trust is necessary to carry out the material purposes of the trust, especially that part mentioned in paragraph twelve. Restatement, Trusts, § 337.

4. Was the interest of the widow Rosalie included in the trust? This requires an examination of paragraphs two and twelve of the will.

"Second: I give, devise and bequeath to my wife, Rosalie Beverlin, one-third of all of the cash on hand, bank deposits, bonds, and any other property, personal, real or mixed, of which I may die possessed, to have, hold or dispose of as she may see fit, without let or hindrance.

"Twelfth: It is my will and I direct that the above-mentioned trustees and their successors shall have authority to sell and transfer by good and sufficient warranty deed, any real estate in which this trust is a part owner and said transfer shall have the same force and effect as if said title was issued by me prior to my death. It being the intention of this clause that it will create a means of handling advantageously any real estate in which my said daughters and their mother and her heirs might jointly inherit whenever, in the judgment of the trustees and the other interested parties or their successors, it might be to the advantage of all parties concerned.

"It is my will and I direct that the above-mentioned trustees and their successors shall have full authority to make, execute, and deliver any oil and gas lease, royalty conveyance or bill of sale to any property owned by my above-mentioned wife and daughters and their legitimate child or children of their body, jointly."

By paragraph five of the original will the testator named his wife as one of the executors and trustees under his will. She is mentioned nowhere else in the will except in paragraphs two and twelve, above quoted. By paragraphs seven to eleven a trust is created for the daughters, and explicit directions are given for the management of their interests by the trustees. It is inconceivable that the testator intended to include the share of his wife in the trust without an express declaration to that effect. Paragraph two clearly gave her a fee-simple interest in one-third of the land and an absolute interest in one-third of the personal property. This was emphasized by the statement that she was "to have, hold or dispose of as she may see fit, without let or hindrance." Clearly her property was not included in the trust. The power given the trustees under paragraph twelve was limited to "any real estate in which this trust is a part owner." From a careful reading of the entire will we are convinced the power in paragraph twelve does not extend to the property of the widow Rosalie.

We therefore conclude that the attempted gift to the grandchildren in paragraph eleven is void; that the trust for the two daughters is valid and will continue until they respectively attain the age of forty years; when each daughter attains the age of forty the trust as to such daughter will terminate. When the elder daughter attains the age of forty the trustee will in its settlement with her protect the interest of the younger daughter by withholding an amount sufficient to make her share equal to the elder daughter. Should one daughter die without legitimate child or children of her body before she reaches the age of forty, her property will pass to the living daughter under paragraph ten of the will.

As the trial court held the entire will valid, that judgment will be modified as set forth in this opinion, and as so modified will be affirmed. It is so ordered.