NOT DESIGNATED FOR PUBLICATION

No. 117,199

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LARRY SELL and PATRICIA G. COYER, as the Cotrustees of the WILLIAM L. GRAHAM
REVOCABLE TRUST,
*Appellees*,

v.

REBECCA JOY (GRAHAM) DORIAN, et al.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFF DEWEY, judge. Opinion filed July 6, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Rachael K. Pirner*, *John P. Woolf*, *Theron E. Fry*, and *Shane A. Rosson*, of Triplett Woolf Garretson, LLC, of Wichita, for appellants Rebecca Joy (Graham) Dorian, Marjorie Helen Adair, Pamela Rae Campbell, Sarah Joy Dorian-Lawrence, James Graham Dorian, Theodore L. Graham, Theodore Patrick Graham, Margaret Elizabeth Graham, Marjorie March Stevens, Sandra March Stevens, Catherine March Tilma, Charles Lyman Stevens, Constance Kay Culley, Deryck Richard Culley, Luke Braden Culley, William George Cully, and Ann Majorie Shipman.

*Terrence J. Campbell*, of Barber Emerson, LC, of Lawrence, and *Steven D. Gough*, of Withers, Gough, Pike & Pfaff, LLC, of Wichita, for appellants Jack L. Graham, Justin Lyman Roberts Graham, Mason Malott Graham, and Haley March (Graham) Wilhite.

*Michael G. Jones*, *Brent A. Mitchell*, and *Teresa L. Adams*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellees.

Before POWELL, P.J., ATCHESON and BRUNS, JJ.

1

PER CURIAM: This appeal arises from a dispute over the administration of the William L. Graham Revocable Trust. The cotrustees, Larry Sell and Patricia G. Coyer, filed a petition for declaratory judgment asking the district court to determine the validity of a provision of the trust agreement relating to the future distribution of certain assets set aside for the benefit of William Graham's great-great-great-grandchildren. In response, some of William's descendants filed counterclaims asserting that this provision of the trust agreement is invalid because it violates the rule against perpetuities. Moreover, some of the descendants sought an accounting of the trust estate and some sought a determination regarding the validity of a provision of the trust agreement purportedly excluding potential beneficiaries who are born out of wedlock. The district court granted summary judgment as a matter of law to the cotrustees but did not address the issue relating to potential beneficiaries who are born out of wedlock. The district court also determined that the descendants were not entitled to an accounting and that it lacked the power to order periodic accountings to a neutral representative of the yet-to-be-born beneficiaries.

We conclude that the district court correctly found that the provision of the trust agreement setting aside certain assets to William's great-great-great-grandchildren does not violate the common-law rule against perpetuities. We also agree with the district court that William's children, grandchildren, and great-grandchildren are not entitled to an accounting of the trust estate. Although we agree with the district court that the trust agreement does not require formal accountings, it does require that the books of account showing all transactions pertaining to the trust estate be open for inspection at all reasonable times to any trust beneficiary. As such, we reverse in part and remand this case to the district court because it failed to consider appointing a guardian ad litem or other neutral representative to protect the right of those potential beneficiaries who are under legal disability, who are unborn, or who are unknown to inspect the books of account. Moreover, we remand the issue of whether William's minor great-great-grandchildren who were born out of wedlock are potential beneficiaries under the terms

2

of the trust agreement as interpreted based on the current status of Kansas law to the district court. Thus, we affirm in part, we reverse in part, and we remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

*Creation of the William L. Graham Revocable Trust*

On August 1, 1978, William L. Graham (William) and Betty Harrison Graham (Betty)—who were husband and wife—executed the William L. Graham Revocable Trust Agreement. On the same day, William and Betty executed Amendment No. One to the trust agreement. Two days later, William executed his Last Will and Testament, directing that his personal effects go to Betty—if she survived him—and that the residue of his probate estate flow to the William L. Graham Revocable Trust.

In his Last Will and Testament, William also included the following provision:

"I am not unmindful of four of my children, Marjorie March Stevens, Theodore Lyman Graham, Constance Kay Culley, and Jack Lyman Graham, their respective spouses and descendants; however, I consider that the provisions which I have made for them by gifts during my lifetime are adequate to provide for their needs and the needs of their spouses and descendants, and accordingly I make no further provisions for them.

"In the event any of such four of my children, their spouses, or their descendants should contest my Will or any Trust established by me, and be successful in such contest, then and in that event I give and bequeath to each of my children, each of their spouses and each of their descendants, the sum of One Dollar ($1.00) and no more."

On July 18, 1980, William and Betty executed Amendment No. Two to the trust agreement. ARTICLE SIXTH of Amendment No. Two to the trust agreement—which is at the center of this dispute—states:

3

"1. If at the time of the Grantor's death, Grantor's spouse, Betty H. Graham, survives Grantor, the Trustee shall:

A. Pay an amount to Betty H. Graham equal to one/half of the Grantor's adjusted gross estate . . . . The payment to Betty H. Graham may consist of cash or other personal or real property to be selected by Betty H. Graham . . . ;

. . . .

G. l. Retain an amount equal to ten percent (10%) of the Grantor's adjusted gross estate as defined in Sec. 2056(c)(2) IRC 1954, or as is hereafter amended, to be held and administered for the benefit of the great-great-great-grandchildren of Grantor. As each such great-great-great-grandchild of Grantor attains the age of twenty-seven and one/half (27-1/2) years there shall be distributed to such great-great-great-grandchild the portion of the Trust Estate equal to a fraction, the numerator of which is one, and the denominator being one plus the number of the then-living great-great-great-grandchildren of Grantor who have not yet attained the age of twenty-seven and one/half (27-1/2) years. In the event all of the assets of the Trust Estate have not been distributed, and there are no great-great-great-grandchildren of Grantor who have not attained the age of twenty-seven and one/half (27-1/2) years and all the great-great-grandchildren of Grantor are deceased, then the remaining Trust assets shall be distributed equally among the great-great-great-grandchildren of Grantor who had previously received distributions, per stirpes.

"2. Anything contained herein to the contrary notwithstanding, the Trust for the benefit of Grantor's great-great-great-grandchildren shall terminate not later than twenty (20) years after the death of the last survivor of the following:

William L. Graham III
Susan Rebecca Graham
Pamela Rae Dorian
Marjorie Ellen Dorian
James Graham Dorian
Sarah Joy Dorian

4

"3. Should this Trust terminate under the provisions of this Article Sixth 1.G. 2., then the assets shall be distributed as though each beneficiary who had not previously attained the age of twenty-seven and one/half (27-1/2) years, attained the age of twenty-seven and one/half (27-l/2) years, on the day preceding the date of termination. If there are no beneficiaries who have not attained the age of twenty-seven and one/half (27-l/2) years, then the assets of such Trust shall be distributed equally among the great-great-great-grandchildren of Grantor who had previously received distributions, per stirpes. If there are no great-great-great-grandchildren of Grantor then all the Trust Estate shall be distributed equally among the then-living great-great-grandchildren of Grantor."

It is undisputed that William L. Graham III, Susan Rebecca Graham, Pamela Rae Dorian, Marjorie Ellen Dorian, James Graham Dorian, and Sarah Joy Dorian are six of William and Betty's grandchildren—each of whom was alive at the time Amendment No. Two was executed. It also is undisputed that there were other specific gifts set forth in ARTICLE SIXTH of Amendment No. Two to the trust agreement that are not material to the issues presented in this appeal. These additional gifts included yearly gifts to two of William and Betty's children—William L. Graham Jr. and Rebecca Joy Dorian—in the amount of $20,000 a year for 15 years.

In addition, ARTICLE SIXTH, Section 1.H to Amendment No. Two created a separate trust disposing of the remainder of the trust estate. This subparagraph provided that Betty would receive annual payments—in an amount equal to 6% of the net fair market value of the trust assets—for 10 years following William's death. At the end of the 10 years, the remaining principal and income of the separate trust would be distributed to various charitable or educational organizations. Following William's death, Betty accepted the distribution of one-half of the trust assets under ARTICLE SIXTH, Section 1.A to Amendment No. Two of the trust agreement, and she disclaimed the annual gifts under ARTICLE SIXTH, Section 1.H.

5

*Death of William L. Graham*

On February 4, 1981, William died and Betty survived him. A probate proceeding was filed in Butler County and the four children identified in William's will made inquiry regarding the terms of the trust agreement. On March 13, 1981, the district court entered an order requiring that a copy of the trust agreement be immediately provided to the children. The order also set a deadline for the filing of pleadings to contest the will. However, the deadline passed and no pleadings contesting the will were filed. Thereafter, the district court entered an order admitting the will to probate on April 21, 1981.

We note that at the time of his death, William had no great-grandchildren, great-great-grandchildren, or great-great-great-grandchildren. There are currently several great-grandchildren and at least two great-great-grandchildren. Both of the great-great-grandchildren are minors and are potentially beneficiaries under the terms of the trust agreement. Even so, there is a question regarding whether these great-great-grandchildren are eligible to be beneficiaries under the terms of the trust agreement because they were born out of wedlock.

*Declaratory Judgment Action*

In September 2014, one of William and Betty's daughters—Rebecca Dorian—retained legal counsel who sent a letter to counsel for the cotrustees raising questions about the trust. It was alleged that the provision of the trust agreement for the benefit of the great-great-great-grandchildren was now invalid because William died more than 21 years ago. Accordingly, it was suggested that the remaining trust assets should be distributed to William's heirs-at-law. However, the cotrustees disagreed with this suggestion.

On November 18, 2015, the cotrustees filed a petition for declaratory judgment under K.S.A. 60-1701 and K.S.A. 58a-201(c) seeking an order from the district court regarding "the interpretation and application of the trust agreement." The petition named more than 60 defendants as well as unknown individuals who may become beneficiaries of the William L. Graham Revocable Trust. In the petition, the cotrustees asked that the district court issue a declaratory judgment that the provision of the trust relating to the great-great-great-grandchildren is valid under Kansas law.

Several of the defendants filed counterclaims alleging that they are beneficiaries under the trust and asking the court to declare void the provision of the trust agreement relating to the great-great-great-grandchildren because it violated the rule against perpetuities. They also sought an accounting of the trust estate. Furthermore, they asked the district court to determine whether the great-great-grandchildren born out of wedlock can be beneficiaries of the trust.

A guardian ad litem—who was evidently appointed by the cotrustees—filed an answer on behalf of the unknown and unborn individuals who may become beneficiaries under the terms of the trust agreement. Yet it does not appear that a guardian ad litem was appointed to represent the interests of the two minor great-great-grandchildren who were born out of wedlock. Moreover, the district court did not decide the issue of whether they could be beneficiaries under the terms of the trust agreement as interpreted given the current status of Kansas law.

Ultimately, the parties filed competing motions for summary judgment. In their motions, the parties agreed that there were no disputed issues of material fact. Following oral arguments by counsel on their respective motions, the district court took the motions under advisement. On December 20, 2016, the district court issued a 12-page memorandum decision and order granting the cotrustees summary judgment as a matter of law. In doing so, the district court determined that the trust did not violate the rule

7

against perpetuities, that the defendants were not entitled to an accounting of the trust estate, and that it had no authority to enter an order requiring periodic accountings by a neutral representative of beneficiaries who are not yet born.

ANALYSIS

*Standard of Review*

Several of the defendants appeal from the district court's decision granting summary judgment in favor of the cotrustees. Because there are no genuine questions regarding the material facts, we are in the same position as the district court in ruling on the legal issues presented. See *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013); K.S.A. 2017 Supp. 60-256(c)(2). Thus, like the district court, we must decide whether the cotrustees are entitled to judgment as a matter of law. See *Creegan v. State*, 305 Kan. 1156, 1159, 391 P.3d 36 (2017).

The interpretation and legal effect of written instruments are matters of law. So, we exercise unlimited review on appeal. *Hamel v. Hamel*, 296 Kan. 1060, 1068, 299 P.3d 278 (2013). When interpreting a trust agreement, our primary duty is to determine the grantor's intent by reading the trust agreement in its entirety. If we can determine that intent from the express terms of the trust agreement, we must execute those terms unless they are contrary to law or public policy. 296 Kan. at 1068. If the words used in the trust agreement clearly express the grantor's intent, then there is no need to resort to canons of construction. *In re Estate of Oswald*, 45 Kan. App. 2d 106, 112, 244 P.3d 698 (2010).

Likewise, the interpretation of a statute is a question of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Kansas Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City*

8

*of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). We must first attempt to ascertain legislative intent from the face of the statute, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, we are not to read something into the statute that is not readily found in its words. 304 Kan. at 409. Only if the text of the statute is unclear or ambiguous do we resort to the use canons of construction or legislative history in an attempt to determine the Legislature's intent. 304 Kan. at 409.

*Common-Law Rule Against Perpetuities*

At the outset, we note that the parties agree that the William L. Graham Revocable Trust was created several years before the Kansas Legislature adopted the Uniform Statutory Rule Against Perpetuities, K.S.A. 59-3401 et seq. As a result, the Uniform Statutory Rule Against Perpetuities does not apply to the future or nonvested interests created by the trust agreement in this case. See K.S.A. 59-3405(a). Instead, we must apply the common-law rule against perpetuities. See *Rucker v. DeLay*, 295 Kan. 826, 830-31, 289 P.3d 1166 (2012).

The common-law rule against perpetuities "precludes the creation of any future interest in property which does not necessarily vest within twenty-one years after a life or lives presently in being, plus the period of gestation, where gestation is in fact taking place." *Barnhart v. McKinney*, 235 Kan. 511, Syl. ¶ 3, 682 P.2d 112 (1984). In other words, any future or nonvested property interest that does not vest within 21 years after the termination of a life in being is void. 235 Kan. at 516. Although Kansas courts have long recognized that the creation of property interests is subject to the rule against perpetuities, modern courts have acknowledged that the rule bears little relation to modern business practices and have limited application of the rule. *Barnhart*, 235 Kan. at 517; *Singer Company v. Makad, Inc.*, 213 Kan. 725, Syl. ¶ 4, 518 P.2d 493 (1973). Thus, a document granting a future interest in property should be interpreted where possible to

9

avoid the conclusion that it violates the rule against perpetuities. *Gore v. Beren*, 254 Kan. 418, 429, 867 P.2d 330 (1994).

Here, based on our review of the trust agreement as amended in its entirety, we find that ARTICLE SIXTH, Section 1.G does not violate the common-law rule against perpetuities. In particular, ARTICLE SIXTH, Section 1.G.1. and Section 1.G.2 must be read together. Although standing alone there is a possibility that ARTICLE SIXTH, Section 1.G.1 could violate the common-law rule against perpetuities, the plain and unambiguous language of ARTICLE SIXTH, Section 1.G.2 prevents this from happening.

ARTICLE SIXTH, Section 1.G.2 explicitly states:

"2. Anything contained herein to the contrary notwithstanding, the Trust for the benefit of Grantor's great-great-great-grandchildren shall terminate not later than twenty (20) years after the death of the following:

William L. Graham III
Susan Rebecca Graham
Pamela Rae Dorian
Marjorie Ellen Dorian
James Graham Dorian
Sarah Joy Dorian"

It is undisputed that each of the persons listed in ARTICLE SIXTH, Section 1.G.2 were William's living grandchildren at the time this provision of the trust agreement was written. Under this provision—often referred to as a savings clause—the assets held in trust for the benefit of William's great-great-great-grandchildren must be distributed within 21 years of a life in being. Further, ARTICLE SIXTH, Section 1.G.3 describes what happens to these assets should the trust terminate under the provisions of ARTICLE SIXTH, Section 1.G.2. One way or the other, the provision setting aside 10% of the

10

adjusted gross trust estate to be held and administered for the benefit of William's great-great-great-grandchildren will terminate no later than 20 years after the death of his last surviving grandchild named in ARTICLE SIXTH, Section 1.G.2.

Although it is possible that there will never be any great-great-great-grandchildren or great-great-grandchildren, this does not mean that the provisions of ARTICLE SIXTH, Section 1.G violates the common-law rule against perpetuities. As the Kansas Supreme Court has held: "'No interest is good unless it must vest, *if at all*, not later than 21 years after some life in being at the creation of the interest.'" (Emphasis added.) *Beverlin v. First National Bank*, 151 Kan. 307, 310, 98 P.2d 200 (1940). See *Singer Company*, 213 Kan. at 729; *In re Estate of Dees*, 180 Kan. 772, 776, 308 P.2d 90 (1957); *McEwen v. Enoch*, 167 Kan. 119, 124, 204 P.2d 736 (1949). As indicated above, regardless of where the trust assets held for the benefit of the great-great-great-grandchildren ultimately end up—which is a question that we find to be purely speculative at this point—they will be distributed within the period prescribed by the common-law rule against perpetuities. Thus, we conclude that the district court did not err in determining that the provisions of ARTICLE SIXTH, Section 1.G. do not violate the common-law rule against perpetuities.

*Accounting of Trust Estate*

ARTICLE SEVENTH, Section 5 of the William L. Graham Revocable Trust Agreement states:

> "During the continuation of this Trust the Trustee shall keep accurate books of account showing and reflecting all transactions pertaining to the Trust Estate, which books of account shall at all reasonable times be open to inspection by any beneficiary . . . ."

Several of the descendants of William Graham contend that they are entitled to an accounting of the trust estate. They argue that they have this right under the Kansas

11

Uniform Trust Code, K.S.A. 58a-101 et seq., under which parents are allowed to protect the interests of their unborn issue and that trustees are always subject to control by courts in administering trusts. They also argue that it would be unjust for a trust worth millions of dollars to be administered for decades with no obligation by the trustees to account to anyone. Moreover, they argue that if the trustees have no duty to account, "the intended beneficiaries (who will not exist for decades) will have no effective way to remedy a breach of trust."

The cotrustees contend that William's descendants are not entitled to an accounting. They argue that the children and grandchildren are not beneficiaries of the trust either under Kansas law or under the terms of the trust agreement. According to the cotrustees, there is no scenario in which the children or grandchildren are beneficiaries. They also argue that the children—and evidently the grandchildren—are not entitled to an accounting as representatives of future generations of beneficiaries. In particular, the cotrustees argue that "[t]he interests of each generation are in direct conflict with the interests of other generations."

The district court did not directly decide whether William's children, grandchildren, or great-grandchildren would have a conflict of interest representing future generations. Instead, the district court determined that "no accounting requirement should be imposed" because William's intent was to exclude his children, grandchildren, and great-grandchildren from benefiting from the provision of trust agreement setting aside certain assets for the benefit of his great-great-great-grandchildren. As such, the district court reasoned that William would also not have intended for his children, grandchildren, and great-grandchildren to receive accountings from the cotrustees. Although the district court found that "it might make sense for there to be periodic accountings to a neutral representative of the yet-to-be-born beneficiaries," the district court found that it "is without the power to enter such an order."

12

Based on our review of the terms of the trust agreement, we agree with the district court that children, grandchildren, and great-grandchildren are not beneficiaries of the William L. Graham Revocable Trust. Based on the plain and unambiguous language of the trust agreement, it is apparent that William did not intend for his children, grandchildren, or great-grandchildren to receive anything from the trust with the exception of limited periodic payments that have already been distributed to two of the children. Likewise, although a parent may represent his or her minor or unborn child if a conservator or guardian ad litem has not been appointed pursuant to K.S.A. 58a-303(6), the plain and unambiguous language of the statute does not authorize grandparents, great-grandparents, or others down the generational line to do the same. Thus, we agree with the district court that William's children, grandchildren, and great-grandchildren are not entitled to an accounting under ARTICLE SEVENTH, Section 5 of the trust agreement.

Nevertheless, we find that William's unborn great-great-great-grandchildren and his great-great-grandchildren—whether born or unborn—are potential beneficiaries under the terms of the trust agreement. As such, their rights under ARTICLE SEVENTH, Section 5 to inspect the cotrustees books of account should be protected. Because it will likely be many decades before it is known whether there are great-great-great-grandchildren or even great-great-grandchildren who might be entitled to a distribution under ARTICLE SIXTH, Section 1.G, the district court appropriately recognized that "periodic accountings to a neutral representative of the yet-to-be-born beneficiaries" might be fitting under the circumstances presented. Even so, the district court believed that it was "without the power to enter such an order." Although it is unclear what exactly the district court believed that it did not have the power to do, we find that it does have the authority to appoint a guardian ad litem or other neutral person to represent the interests of possible beneficiaries who are under a legal disability, who are unborn, or who are unknown.

13

Under K.S.A. 59-2254, "[a]ny beneficiary who is under legal disability, and also all possible unborn or unascertained beneficiaries may be represented in a trust accounting by living competent members of the class to which they do or would belong, or by a guardian *ad litem*, as the court deems best." Although this statute was enacted prior to the adoption of the Kansas Uniform Trust Code, it has not been repealed. See English, *The Kansas Uniform Trust Code*, 51 Kan. L. Rev. 311, 326 n.117 (2003). Hence, it continues to grant district courts the authority to protect the rights of beneficiaries who are under a legal disability as well as possible beneficiaries who are unborn or otherwise unknown.

Likewise, K.S.A. 58a-305(a) grants the district court—as well as a trustee—authority to appoint "a representative to receive notice, give consent, and otherwise represent, bind, and act on behalf of a minor, incapacitated, or unborn individual, or a person whose identity or location is unknown." It is important to recognize that under K.S.A. 58a-305(b), the district court may appoint such a representative "whether or not a judicial proceeding concerning the trust is pending." Thus, we conclude that the district court has the authority to appoint a guardian ad litem or other neutral representative to protect the rights of possible trust beneficiaries who are under legal disability, who are not yet born, or who are otherwise unknown.

*Potential Beneficiaries Born Out of Wedlock*

According to the appellants, the district court still must address the issue of whether William's great-great-grandchildren who were born out of wedlock are potential beneficiaries of the trust based on the language of the trust agreement as interpreted in light of current status of Kansas law. Based on our review of the record, we find that this issue was properly presented to the district court. Moreover, we find that this is an important issue because if these great-great-grandchildren are potential beneficiaries, they could possibly have the right to receive some or all of the assets set aside in ARTICLE

14

SIXTH, Section G. l and the right to inspect the books of account under ARTICLE SEVENTH, Section 5 of the trust agreement—possible rights that should be protected. Thus, we remand this issue to the district court for resolution.

CONCLUSION

In summary, we conclude that the district court properly determined that the provisions of ARTICLE SIXTH, Section 1.G. do not violate the common-law rule against perpetuities. We also conclude that the district court properly determined that William's children, grandchildren, and great-grandchildren are not entitled to an accounting of the trust estate. However, we conclude that the district court erred in finding that it did not have the authority to appoint a guardian ad litem or other neutral representative to protect the rights of possible trust beneficiaries who are under legal disability, who are not yet born, or who are otherwise unknown.

Although we agree with the district court that the trust agreement does not require formal accountings, it does require that the books of account showing all transactions pertaining to the trust estate are to be open for inspection at all reasonable times to any trust beneficiary. If a guardian ad litem or other neutral representative is not appointed to protect the rights and look out for the best interests of the potential beneficiaries who are under legal disability, who are not yet born, or who are otherwise unknown, this provision of the trust agreement would be rendered meaningless. Accordingly, we remand this issue to the district court for further consideration but we will yield to the district court's discretion—hopefully with the agreement of the parties—on how to put a reasonable plan in place for periodic review of the books of account by the guardian ad litem or other neutral representative appointed on behalf of these potential beneficiaries.

Finally, we conclude that the issue of whether William's great-great-grandchildren who were born out of wedlock are also potential beneficiaries of the trust based on the

15

language of the trust agreement as interpreted in light of current status of Kansas law should be remanded to the district court for ruling. We find this issue to be significant because if these great-great-grandchildren are found to be potential beneficiaries, they may ultimately receive some or all of the assets set aside by William in ARTICLE SIXTH, Section G.1., and would have the right to review the books of account showing all of the transactions pertaining to the trust estate. Furthermore, if the district court determines that there is not a parent who can adequately represent the interests of the minor great-great-grandchildren born out of wedlock, then it should appoint a guardian ad litem or other neutral representative to represent their interests as this issue is being considered.

Affirmed in part, reversed in part, and remanded with directions for further proceedings.