This appeal concerns application of the rule against perpetuities to the mineral interest a grantee was to receive upon expiration of the grantor's interest, which had been reserved for 15 years and so long thereafter as production of minerals continued in paying quantities. We affirm the trial court's dismissal of the complaint, concluding that the reservation clause in the deeds left to the grantee a possibility of reverter, which is not subject to the rule against perpetuities.
By contract executed on September 30, 1953, Frank F. Earle, plaintiff's testator, and his wife, Martha Lee Earle, agreed to sell four parcels of land to the defendant, International Paper Company (IP), over a four-year period. This was in fact accomplished, the last conveyance occurring on January 16, 1956. Each of the four deeds contained the following clauses:
 "Frank F. Earle and his wife, Martha Lee Earle, . . . for [certain consideration] do hereby grant, bargain, sell and convey (subject to the reservations hereinafter set forth) unto International Paper Company . . . all that certain real property . . . described as follows:
". . .
 "EXCEPTING AND RESERVING unto the said Grantor, Frank F. Earle, and his *Page 991 
heirs and assigns, an undivided one-half (1/2) interest in and to all of the oil, gas and minerals in, under or upon said land (but not excepting and reserving to said Grantor any interest in or to the sand, clay or gravel), but only for a period of fifteen (15) years from and after the date of this conveyance, provided that if at the expiration of said period of fifteen (15) years such oil, gas or minerals are being produced from said lands in paying quantities, then such reservation shall extend thereafter as long as such oil, gas or minerals continue to be produced from said lands in paying quantities; and upon the expiration of such period of reservation as hereinabove provided, the said reservation shall then terminate and become void and ineffective and the title to such interest in said oil, gas and minerals and the right to control, develop and lease the same shall vest in Grantee, or its successors and assigns."
Each deed contained an additional clause giving Earle, during the reservation term, exclusive leasing rights for the entire mineral interest in the property.
No production of minerals occurred during the respective 15-year primary terms. By 1971 IP had thus acquired the entire fee in each parcel, including all mineral interests.
Frank Earle died in 1969, leaving his widow as his only surviving heir and next of kin. His will established two trusts, one for the benefit of Mrs. Earle and the other for the benefit of Birmingham-Southern and Huntingdon colleges. By agreement all real estate interests were allocated to Mrs. Earle's trust share.
In 1979 IP began a complex series of transactions to develop its mineral interests. The parties to these transactions (defendants) received certain rights to the oil and gas in the property. Drilling operations began and in December 1980 one of the defendants struck oil. Another defendant then apparently obtained a title opinion raising questions about the effect of the rule against perpetuities on the Earle deeds.
In September 1981 the Earle trustees filed suit, seeking a declaration that IP's claim to the mineral estate originally reserved by Earle was a springing executory interest, subject to and voided by the rule against perpetuities. The defendants filed answers and motions to dismiss. The plaintiffs filed a motion for partial summary judgment to determine the applicability of the rule against perpetuities. The trial court granted the defendants' motions to dismiss the complaint.
Under Code of 1975, § 35-4-4, the common-law rule against perpetuities applies in Alabama.[1] Professor Gray's authoritative work states the common-law rule as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." J. Gray, The Rule Against Perpetuities, § 201 (4th ed. 1952). This classic formulation is accepted in Alabama, e.g. First Alabama Bank of Montgomery v. Adams, Ala.,382 So.2d 1104 (1980).
The rule against perpetuities applies only to estates that have not vested in interest. For these estates the rule sets a time limit within which vesting in interest must occur. Estates that may vest too remotely, i.e. that may remain contingent beyond the perpetuities period, are void ab initio. Vesting in possession is unaffected by the rule. See generally W. Leach, "Perpetuities In A Nutshell," 51 Harv.L.Rev. 638, 639-640 (1938). Accord Lyons v. Bradley, 168 Ala. 505, 53 So. 244
(1910) (applying the common-law rule). *Page 992 
The primary issue in this case is whether IP's estate[2], at the time of its creation, was vested in interest or otherwise not subject to the rule against perpetuities.[3] Clearly, at the time of delivery of the deeds the possibility existed that paying production would begin in the 15-year primary term and continue beyond the perpetuities period. The plaintiffs contend that IP's interest was not vested when the deeds were delivered and might vest too remotely. Accordingly, the plaintiffs conclude that IP's interest was void ab initio under the rule against perpetuities, with the result that Earle owned a fee simple absolute interest in one-half of the minerals, free of any future interest in IP.
To reach this conclusion the plaintiffs analyze Earle's interest under the deeds as a fee simple determinable (i.e. a fee simple that is to last only so long as certain conditions exist) and IP's as a springing executory interest. Since executory interests are by definition not vested until they become possessory, the plaintiffs are able to argue that IP's estate is subject to the rule. In making their analysis the plaintiffs emphasize that under our common-law version of the rule against perpetuities, orthodox common-law distinctions among estates in real property are controlling. The plaintiffs make this point in reply to the defendants' argument that certain statutory definitions abrogate the common-law definitions on which the plaintiffs rely to characterize the interests of Earle and IP. However, the plaintiffs gloss over another common-law distinction — that between exceptions and reservations — which if applied, turns their analysis on its head.
This distinction is relevant to defining IP's interest if we assume, as the plaintiffs argue, that common-law definitions control and that Earle's estate is a fee simple determinable. At common law, the definition of IP's estate then depends on the manner in which the deeds severed Earle's mineral interest from the fee simple absolute he held originally. The terms "exception" and "reservation" denote two ways such severance can occur under a deed by which the grantor keeps for himself some interest in property otherwise conveyed to the grantee.
 "An `exception' exists when some part of the ownership of the grantor is never parted with, while a `reservation' is the term applicable when the instrument transfers all that the grantor had but recreates in him some specified interest with respect to the land transferred."
6A R. Powell, Law Of Real Property, § 887[5] (Rohan rev. 1982). Thus a reservation is traditionally regarded as "the equivalent of a grant by the grantee to the grantor," Jackson v.Snodgrass, 140 Ala. 365, 37 So.2d 246, 247 (1904). In contrast, "an exception withdraws from operation of deed part of thing granted which would otherwise pass to grantee." Black's Law Dictionary, 502 (5th ed. 1979). See also Frank v. Myers,97 Ala. 437, 11 So. 832 (1892). Typically, although not necessarily, an exception is used to withhold from the conveyance an interest already severed (and usually held by someone other than the grantor) or to sever a portion of the property in which the grantor wishes to retain the entire interest (e.g. a conveyance of lot A excepting the northwest quarter). In contrast, a reservation typically severs an interest different in kind from the fee conveyed.
If, as the plaintiffs urge, we conclude that the deedsexcepted Earle's mineral interest, then that interest was unaffected by Earle's conveyance to IP. Earle simply withheld half of the mineral interest he had received years earlier as part of the fee simple absolute from his predecessor. *Page 993 
From this premise the plaintiffs characterize IP's interest as executory and subject to the rule. To do so, they use an analysis that we need not consider here, because in our view the deeds reserved Earle's mineral interest. Under the common-law definition of a reservation, it follows that IP recreated the one-half mineral interest in Earle as grantee.
We have assumed that the plaintiffs are correct in characterizing Earle's interest as a fee simple determinable. What then is the nature of the interest left in IP? "A possibility of reverter is the interest left in a transferor who creates a fee simple determinable." C. Moynihan,Introduction To The Law Of Real Property 95 (1962). At common-law possibilities of reverter are not subject to the rule. Hinton v. Gilbert, 221 Ala. 309, 128 So. 604 (1930), 4Restatement Of Property, § 370, comment e at 2144 (1944).
Clearly, the common-law distinction between exceptions and reservations is relevant in applying our common-law rule against perpetuities to a conveyance by which the grantor keeps a fee simple determinable. The deed language here is of no help in making the distinction since both terms are used, and in any event the language is not controlling. We have long recognized that "the learning in respect to the distinctions between reservations and exceptions is artificial and so apt not to be observed in the preparation of deeds that at this time the courts construe a reservation as an exception, and vice versa, in order to give effect to the obvious intention of the parties." Webb v. Jones, 163 Ala. 637, 50 So. 887, 888 (1909). To ascertain intent, the court may "look to the condition of the estate granted and the surroundings of the parties," id.Accord Crump v. Crump, 261 Ala. 504, 508, 74 So.2d 713 (1954). Realistically, Frank Earle had no intent regarding any distinction between withholding an interest and receiving the same interest from his grantee. He would simply have intended to convey the property while retaining limited mineral rights by whatever form of words the lawyers said would be effective. The question, then, is to determine which concept — exception or reservation — best describes the nature of the transaction as a whole. Setting out the rights and interests exchanged by the parties in the deeds reveals that the concept of a reservation is most applicable.
At the outset Earle held title in fee simple absolute to the four parcels in question. Pursuant to the real estate sales contract he sold each parcel to IP by deeds conveying "all that certain real property . . . EXCEPTING AND RESERVING unto the said grantor, Frank F. Earle and his heirs and assigns" an undivided one-half mineral interest for a limited term. It is significant that words of inheritance appear in this clause. "Absent words of inheritance, a reservation lasts only for the life of the reserver, while the exception leaves the inheritable interest untouched in the grantor." 6A R. Powell,Law Of Real Property, supra, § 887[5]. Construing the clause as an exception would thus render the words of inheritance superfluous. Since deeds should be construed to give effect to all words used, e.g. Hall v. Gulledge, 277 Ala. 580,173 So.2d 571 (1965), it is preferable to construe this clause as a reservation.
Further evidence that the clause operated as a reservation can be found in the limitations that it placed on Earle's interest. The duration of Earle's one-half mineral interest as set out in the reservation clause corresponds precisely to the term of the standard oil and gas lease, which lasts for a fixed number of years (the primary term) and so long thereafter as production continues. The present deeds, after the reservation clause, contain an additional clause making specific provision for leasing rights (there are minor variations in wording among the four deeds):
 "During the period of reservation . . . the said Frank F. Earle and his heirs (but not his or their assigns), shall have the exclusive right, on behalf of and for the benefit of all of the owners of said oil, gas, and minerals, to lease the said lands for exploration for and development of oil, gas and minerals exclusive of sand, *Page 994 
clay and gravel; provided that any such lease shall provide for retention by the owners of the minerals of a royalty . . . and shall provide for compensation to be paid by the lessee to the lessors for any unnecessary damage or injury by the lessee to the surface, surface rights or timber on said lands; and provided further that if the said Frank F. Earle or any of his heirs after his death, should be or become legally incompetent, then the purchaser [IP], its successors and assigns, shall thereafter have the right to lease its interest in such oil, gas and minerals." (Emphasis added.)
This clause gives Earle the right to lease not only his half of the mineral interests but IP's half as well. However, Earle's leasing rights, unlike his ownership claim to one-half of the minerals, could not be assigned under this clause, and IP held the leasing rights in the event of incapacity of Earle or his heirs. In addition, Earle's leasing rights were conditioned on requiring a specified royalty interest and compensation for waste, thus protecting IP's mineral and surface rights.
From this it is apparent that Earle did not withhold a mineral interest unaffected by the conveyance, as would have happened under an exception in the deeds. Rather, Earle's interest was significantly restricted in IP's favor. In particular, Earle would have had no independent leasing rights of the undivided mineral interest were it not for the additional clause granting Earle limited control over IP's estate. Such a transaction is more consistent with the concept of reservation (an implied regrant from IP back to Earle) than an exception.
Doubt that the deeds operate by means of reservation rather than exception must be resolved in favor of the former because of two different rules of construction. First, deeds of bargain and sale for valuable consideration are to be construed against the grantor and in favor of the grantee, when ambiguous. E.g.Porter v. Henderson, 203 Ala. 312, 82 So. 668, 671 (1919). Interpreting the clause in question as a reservation, which initially grants the entire fee, favors the grantee. The second rule of construction is that when a deed is ambiguous the construction most favorable to its validity will be adopted.E.g. Russell v. Taylor, 222 Ala. 312, 131 So. 887 (1931). This may be thought inconsistent with the following principle stated by the leading authority on the common-law rule:
 "The rule against perpetuities is not a rule of construction but a peremptory command of the law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore, every provision in a will or settlement is to be construed as if the rule did not exist and then to the provisions so construed, the rule is to be remorselessly applied."
J. Gray, The Rule Against Perpetuities, supra, § 629, quoted inFirst Alabama Bank of Montgomery v. Adams, supra. However, Gray goes on to state that:
 "There is a legitimate use of the rule against perpetuities in matters of construction. When the expression a testator uses is really ambiguous, and is fairly capable of two constructions, one of which would produce a legal result, and the other a result that would be bad for remoteness, it is a fair presumption that the testator meant to create a legal rather than an illegal interest."
The Rule Against Perpetuities, supra, § 633. Accordingly, those who find the deeds really ambiguous, who are unpersuaded by our view that they operated as reservations, must nevertheless resolve their doubts in favor of the alternative which places the deeds outside the rule.
Our view of the deeds here is consistent with the approach taken in Bagby v. Bredthauer, 627 S.W.2d 190 (Tex.Civ.App. 1981), in which the court held that reservation of a royalty interest for a defeasible term creates a fee simple determinable in the grantor and a possibility of reverter in the grantee. The plaintiffs seek to distinguish the Bagby case on the ground that the interest reserved was a passive royalty interest rather than an active working interest like Earle's. According to the plaintiffs, *Page 995 
the Texas court would find an exception in the present case because Earle held the right to lease and thus collect delay rentals and bonuses. We disagree. As explained above, Earle's leasing rights were limited and did not even derive from the "excepting and reserving" clause. Earle's interest was carefully tied to IP's and not simply left in Earle for him to use as he wished, which would be the traditional notion of an exception.
We recognize that the above approach relies on an artificial distinction in order to create a fictional regrant back to Earle. Moreover, to label IP's interest as a possibility of reverter in no way addresses the policy issues raised in a perpetuities case. In fact, commentators agree that exclusion of possibilities of reverter from the rule's operation is a mere historical accident with no basis in policy. E.g. VIAmerican Law Of Property, supra, § 24.1 at 7 n. 3, § 24.62. Accordingly, it is appropriate to consider whether the common-law analysis given above is consistent with the policies behind the rule against perpetuities, and if not, whether there is a principled way for this court, as opposed to the legislature, to modify the common law.[4]
The rule against perpetuities was developed in the context of family wealth transactions to prohibit certain types of long term contingent interests that effectively restrict the alienability of property. The policies underlying this function of the rule against perpetuities have been summarized as follows:
 "[T]he social interest in preserving property from excessive interference with its alienability rests partly upon the necessities of maintaining a going society controlled primarily by its living members, partly upon the social desirability of facilitating the utilization of wealth, and partly upon the social desirability of keeping property responsive to the current exigencies of its current beneficial owners."
Restatement (Second) Of Property, Donative Transfers 12 (Tent.Draft No. 2, 1979).
Considering the case from this perspective, it is clear that the deeds before us in no way frustrate the policies underlying the rule against perpetuities. Substantial arguments to the contrary are conspicuously absent from the plaintiffs' briefs. The defendants on the other hand have persuasively argued that the arrangement between the parties facilitated use of the mineral estate in the property by ensuring that all leasing rights would remain under the control of one party — either Earle or IP, depending on when paying production began. Moreover, the deeds ensured that Earle's one-half mineral interest would not be permanently severed from the fee, thus preventing division of interests and title complications that would hinder alienability. The plaintiffs themselves point out that it might have been impractical for the parties to join together and convey the fee during the reservation term. Yet the plaintiffs ask us to prolong this state of affairs by voiding the portion of the deeds that would unite the fee. In our view, to find a violation of the rule against perpetuities and reach such a result would in fact frustrate the policies behind the rule.
For these reasons the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and EMBRY, JJ., concur.
JONES, J., concurs specially with opinion in which FAULKNER, SHORES and ADAMS, JJ., concur.
[1] § 35-4-4 provides: "The common-law rule against perpetuities as to land shall be in full force and effect in this state so that the rule against perpetuities applicable to personal property and to land shall be the same." This statute, enacted in 1931, replaced the unique statutory version of the rule against perpetuities that applied to real property. See generally E. Faith, "The Alabama Rule Against Perpetuities," 4Ala.L.J. 89 (1929), "Repeal Our Absurd Statute On Perpetuities," 5 Ala.L.J. 267 (1930), and "Comment: The Rule Against Perpetuities In Alabama," 18 Ala.L.Rev. 129, 130-31 (1965).
[2] We use the phrases "IP's estate" or "IP's interest" solely in reference to IP's future interest (as of the execution of each deed) in the one-half mineral interest reserved by Earle. Under the deeds IP also received a fee simple absolute in all of the surface, all of the sand, clay and gravel and one-half of the oil, gas and other minerals.
[3] We do not reach the defendant's additional contention that no violation of the rule against perpetuities occurred here even if the rule applies.
[4] See VI American Law of Property, supra, §§ 24.9-.10, for discussion of the role of stare decisis and the relative importance of substance and form in deciding perpetuities issues in comparison with other areas of property law.