IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,973

OXY USA INC.,
*Appellee*,

v.

RED WING OIL, LLC, et al.,
*Appellees*,

(ALICE LAVELLE KING),
*Appellant.*

SYLLABUS BY THE COURT

1.

Misappropriation of royalties cannot, standing alone, establish a claim of adverse possession to a mineral interest.

2.

Adverse possession of a mineral interest requires actively working the minerals in the ground.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 1028, 360 P.3d 457 (2015). Appeal from Haskell District Court; BRADLEY E. AMBROSIER, judge. Opinion filed June 7, 2019. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed and remanded with directions.

*Jacob M. Cunningham*, of Doering & Grisell, P.A., of Garden City, argued the cause and was on the briefs for appellant.

*Daniel E. Lawrence,* of Fleeson, Gooing, Coulson, & Kitch, L.L.C., of Wichita, argued the cause, and *Willard B. Thompson,* and *David G. Seely*, of the same firm, and *Erik E. Nordling*, of Kramer, Nordling, & Nordling, LLC, of Hugoton, were with him on the briefs for appellees Red Wing Oil, LLC, et al.

The opinion of the court was delivered by

STEGALL, J.:  This case arises from a dispute over a one-half ownership interest in the minerals under a quarter section of land in Haskell County. Royalties from these mineral rights are being generated by mineral production occurring on adjacent land which is part of the same unitized production unit. The producer initiated an interpleader and quiet title action in order to determine who is the rightful owner of these royalties. As set forth below, we determine that the rightful owner of the disputed one-half interest in the minerals is the fee owner of the surface property and that, as a matter of law on these facts, adverse possession does not bar the surface owner's rightful claim to ownership.

*Factual and Procedural Background*

In 2009, Oxy USA Inc. (Oxy) developed a productive oil and gas well on a unitized production unit of land in Haskell County. The unitized area included the quarter section of land which is the subject of this lawsuit (the Property). The well is not actually located on the Property, but the owner of the minerals under the Property is entitled to receive royalties from the production by virtue of the unitization agreement. But Oxy was unable to determine which party owned a disputed one-half interest in the minerals under the Property. Thus, Oxy initiated this interpleader and quiet title action to determine the rightful legal owner of the minerals under the Property.

The real contestants here are the two potential owners of the minerals at issue. Alice LaVelle King, who currently owns the surface of the Property and an undisputed

2

one-half interest in the minerals, claims the other one-half mineral interest belongs to her. Opposing King are at least 41 different people or entities that claim some fraction of the disputed one-half mineral interest under a term interest once held by Frank Luther. For ease of reference, we will refer to these parties as the Luther Term Interest Holders.

Highly summarized, the history of ownership of the disputed minerals on the Property proceeds as follows. In 1943, the owner of the Property entered into an oil and gas lease with a producer. Following the Property owner's death, the Property passed to Frank Luther, who took the property subject to the lease. Then, Luther sold the Property, reserving only:

> "an undivided one-half interest in and to all oil, gas or other minerals in and under and that may be produced from the . . . property and the right of participation in all events pertaining to said oil, gas or other minerals for a period of twenty (20) years from the date of this instrument or as long thereafter as oil, gas or other minerals is produced therefrom[.]"

This is known as the "Luther Term Mineral Interest." The district court found that the Luther Term Mineral Interest expired in 1972 and the one-half interest in the minerals reverted to the fee holder at that time. The parties do not contest this finding. So, it is undisputed that the reversionary interest was triggered in 1972 in favor of the fee owner of the Property. King's father was the fee owner of the Property in 1972, and ultimately King became owner of the Property.

This case arises squarely out of the next fact. Between 1972 and 2009 (when Oxy completed the well on the Property) the Luther Term Interest Holders received royalties flowing from their claimed one-half interest in the minerals. The parties now agree the Luther Term Interest Holders should not have been receiving the royalties because the Luther Term Mineral Interest had expired and the right to receive these royalties had reverted to King's predecessor in interest (the fee owner of the Property). But neither

3

King nor her predecessors ever took any action to prevent the Luther Term Interest Holders from receiving these royalties or attempted to recover—either in law or in fact—their reversionary interest in the minerals. It appears the fee owners of the Property did not attempt to enforce their reversionary rights in the disputed minerals until Oxy filed this action.

As a result, this complex web of ownership claims boils down to a straightforward question: Can King enforce her reversionary interest in the minerals against the Luther Term Interest Holders, or is she now prevented from doing so by either a statute of limitation or by adverse possession? The material facts are undisputed, and the questions presented are resolvable purely as a matter of law.

The district court granted summary judgment in favor of the Luther Term Interest Holders, finding King's claim was time barred by the statute of limitations in K.S.A. 60-507. King appealed, and the Court of Appeals reversed, holding that the real question was whether the Luther Term Interest Holders were adverse possessors under K.S.A. 60-503. See *Oxy USA, Inc. v. Red Wing Oil*, 51 Kan. App. 2d 1028, 1036, 360 P.3d 457 (2015). The Court of Appeals held that the record revealed King had no notice of the Luther Term Interest Holders' receipt of royalty payments and, as a result, there could be no adverse possession as a matter of law. 51 Kan. App. 2d at 1038-39.

While the scope of the dispute was wider in the courts below, on appeal to this court, the Luther Term Interest Holders present us with a significantly narrowed argument. Their prior claims about whether the disputed mineral interest ever reverted to the fee owner of the Property have not been advanced and are not before us. Essentially, the Luther Term Interest Holders now argue that the Court of Appeals misread the record. They claim there *was* evidence that King knew of the royalty payments. This error, they argue, led the Court of Appeals to improperly direct that summary judgment be entered in King's favor.

4

The Luther Term Interest Holders now contend they have alleged sufficient facts of adverse possession to survive summary judgment. They admit that the term interest expired in 1972, triggering the reversionary interest in favor of King and her predecessors in interest, and therefore, they had no legal interest in the disputed minerals as of 1972. But they argue that between 1972 and 2009 they openly, exclusively, and continuously took the royalties that flowed from the mineral interest and King either knew or should have known they were taking these royalties. Thus, the Luther Term Interest Holders ask this court to order a remand to develop the factual record through discovery. King, in turn, argues that under no circumstances could these facts, even if true, qualify as adverse possession of the mineral interest as a matter of law.

*Analysis*

We exercise plenary review over lower courts' decisions concerning motions for summary judgment. *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1002, 425 P.3d 1253 (2018). And the standard for summary judgment is well known and often stated:

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.""" 308 Kan. at 1001.

5

Furthermore, to the extent that we must interpret K.S.A. 60-503 and K.S.A. 60-507, we exercise unlimited review. 308 Kan. at 1002.

As a preliminary matter, the parties agree that the Court of Appeals was correct to analyze the dispute through the lens of adverse possession under K.S.A. 60-503 (rather than under K.S.A. 60-507). We agree and will briefly explain why. K.S.A. 60-503 states in relevant part: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." While K.S.A. 60-507 states: "No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen (15) years from the time the cause of action accrued."

The language of the two statutes suggests there might be a factual scenario under which an action for the recovery of real property is time-barred by K.S.A. 60-507 even though the elements of adverse possession have not been satisfied under K.S.A. 60-503. It is not necessary to decide whether King's claim is time-barred by the 15-year statute of limitation in K.S.A. 60-507 because, in this case, the Luther Term Interest Holders do not argue that King's cause of action accrued more than 15 years before her claim was made. Instead, as the Court of Appeals found and as the Luther Term Interest Holders now concede, their affirmative defense against King's claim of ownership has always sounded in adverse possession. Thus, the Luther Term Interest Holders must satisfy the elements of adverse possession under K.S.A. 60-503.

Given this, the Luther Term Interest Holders claim their open, exclusive, and continuous possession of the royalties for a period of 15 years is sufficient to establish adverse possession of the disputed mineral interest and to quiet legal title to those minerals in them, thus extinguishing King's legal claim to ownership. The Court of

6

Appeals suggested there were many reasons why the Luther Term Interest Holders' claim must fail, including what the Court of Appeals understood to be factual deficiencies in the record. The Luther Term Interest Holders dispute the Court of Appeals' understanding of the record, especially its misunderstanding of the location of the actual well and the effect of the unitization agreement. We discern a clearer pathway to the same result—one that does not entangle us in factual disputes.

Simply put, even if all the facts the Luther Term Interest Holders rely on are true, and even if a remand for further discovery could produce evidence that King and her predecessors in interest had actual knowledge that the Luther Term Interest Holders were improperly collecting royalties, this still would not be sufficient as a matter of law to establish a viable claim for adverse possession of the mineral interest here.

While it is legally possible to adversely possess a mineral interest, the mere misappropriation of royalties standing alone is not sufficient to establish adverse possession of a mineral interest. A royalty represents a portion of the value of minerals *after* production. Thus, being in open, exclusive, and continuous possession of a royalty can never suffice to establish an adverse claim over minerals *in place*. As our Court of Appeals explained in *Stratmann v. Stratmann*, 6 Kan. App. 2d 403, 408, 628 P.2d 1080 (1981), "[c]ollection of royalty payments has been held not to constitute adverse possession of the minerals in place. Such collection of royalty payments is merely conversion of the oil and gas that has already been produced and does not affect what remains in the ground." Thus, improperly receiving a royalty is something like a mere conversion of produced minerals—akin to tapping a pipeline and diverting its flow. These are not acts asserting ownership over the minerals still in the ground.

Adversely possessing minerals in place requires something more than receiving royalties after the minerals have been extracted. It requires the adverse possessor actively "working the minerals." See 1 Kuntz, Law of Oil & Gas § 10.5 (1987) (discussing how

7

an adverse possessor can gain title by actively working the minerals). This element may be satisfied by facts demonstrating physical control over the minerals while they are still in the ground. But we decline to speculate further about what factual scenario might be sufficient to establish adverse possession of minerals in place. It is enough for today's case to establish that the passive receipt of royalties, even if open, exclusive, and continuous for a period of 15 years, is not—as a matter of law—adverse possession of the minerals in place.

Ultimately, we agree with the Court of Appeals' decision that King is the legal owner of the minerals under the Property. Moreover, for reasons other than those enunciated by the Court of Appeals, we further agree with the lower court's conclusion that the Luther Term Interest Holders cannot establish the elements of adverse possession in this case. As such, title in the disputed minerals must be quieted in favor of King. We therefore affirm the Court of Appeals order directing the district court to enter summary judgment in favor of King as being right for the wrong reason. See *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016) (court can affirm judgment when right for the wrong reason).

Affirmed.

NUSS, C.J., not participating.
MIKE KEELEY, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Keeley was appointed to hear case No. 111,973 vice Chief Justice Nuss under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.