IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,387

JASON OIL COMPANY, LLC,
*Appellee*,

v.

FRANK E. LITTLER, et al.,
*Defendants*,

(Debra Baldwin Burkhart, Susan Baldwin Manes, and James Baldwin),
*Appellants*,

and

(F&E Littler, LLC, Janice Stull, Craig Stull, Jerilyn Ann Stull, and Michael Stull),
*Appellees*.

SYLLABUS BY THE COURT

When a grantor of real property retains a defeasible term-plus-production mineral interest by exception in the deed of conveyance, thereby conveying to the grantee a future interest in the mineral interest, that conveyance of a future interest is not subject to the common-law rule against perpetuities.

Appeal from Rush District Court; BRUCE T. GATTERMAN, judge. Opinion filed August 16, 2019. Judgment of the district court is affirmed.

*John L. Richeson*, of Anderson & Byrd, LLP, of Ottawa, argued the cause, and *Jeffrey A. Wilson*, of the same firm, was with him on the briefs for appellants.

*Kenneth L. Cole*, of Woelk & Cole, of Russell, argued the cause and was on the brief for appellee Jason Oil Company, LLC.

*Robert E. Bauer*, of Bauer, Pike, Bauer & Wary, LLC, of Great Bend, argued the cause, and *Kate M. Wary* and *Greg L. Bauer*, of the same firm, were with him on the brief for appellees F&E Littler, LLC, Janice Stull, Craig Stull, Jerilyn Ann Stull, and Michael Stull.

*David E. Pierce*, of Topeka, was on the brief for amicus curiae Eastern Kansas Oil & Gas Association.

*Joseph A. Schremmer* and *Charles C. Steincamp*, of Depew Gillen Rathbun & McInteer, LC, of Wichita, *Tyson Eisenhauer*, of Johnston Eisenhauer Eisenhauer & Lynch, LLC, of Pratt, and *Tyler K. Turner*, of Jeter Law Firm, LLP, of Hays, were on the brief for amicus curiae Kansas Independent Oil & Gas Association.

*Will B. Wohlford*, *Roger L. Theis*, and *Jonathan A. Schlatter*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, were on the brief for amicus curiae Wichita Association of Petroleum Landmen.

The opinion of the court was delivered by

JOHNSON, J.: This is a quiet title action involving the mineral interests in two tracts of real estate that were conveyed by deeds in which the grantor excepted the mineral interests for a "period of 20 years or as long thereafter" as minerals may be produced. The grantor's successors in interest (Grantor's heirs) claim that the future interests in the minerals that the deeds purported to convey to the grantees—that is, ownership of the minerals when grantor's excepted term interest ended—violated the common-law rule against perpetuities (the Rule), thereby voiding those conveyances ab initio and preventing them from subsequently devolving to the grantees' successors in interest (Grantees' heirs). Consequently, Grantor's heirs now claim full ownership of the mineral interest in both tracts.

2

The district court relied on the intent of the parties to the original deeds to find that the Grantees' heirs obtained ownership of the minerals when 20 years expired without production on the property. We affirm the district court's result, but on different grounds. We determine that the common-law rule against perpetuities, being a rule founded upon public policy, should not be applicable to the circumstances presented here.

FACTUAL AND PROCEDURAL OVERVIEW

The parties do not dispute the facts. On December 30, 1967, Frank E. Littler (Grantor) executed two deeds conveying tracts of real estate situated in the same section, to-wit: Section 20, Township 16 South, Range 19, West of the 6th P.M., Rush County, Kansas. He conveyed the East Half of the section (East Tract) to Franklin G. Littler and Elaine Littler (Littler Grantee). He conveyed the Northwest Quarter of the section (Northwest Tract) to Ruby I. Myers and George E. Myers (Myers Grantee). The Littler Grantee and the Myers Grantee will be collectively referred to as Grantees. Both the deed transferring the East Tract and the deed transferring the Northwest Tract contained the following language:

"EXCEPT AND SUBJECT TO: Grantor saves and excepts all oil, gas and other minerals in and under or that may be produced from said land for a period of 20 years or as long thereafter as oil and/or gas and/or other minerals may be produced therefrom and thereunder." (the reservation).

On December 28, 1973, in Rush County Probate Case No. 3802, a Journal Entry of Final Settlement distributed specified percentages of the residue of Grantor's estate, which would encompass any excepted interest in the above-described real estate, to children and grandchildren. Some of the Grantor's grandchildren and great-grandchildren who succeeded to the residuary interests under Grantor's will are the Grantor's heirs

3

claiming the invalidity of Grantor's conveyance of the future interest in minerals to the Littler Grantee and the Myers Grantee.

From the expiration of the 20-year term of years, December 30, 1987, to the date the district court filed its memorandum decision granting summary judgment to the Grantees' heirs, May 31, 2017, there was no drilling operation conducted on either the East Tract or the Northwest Tract, and no oil or gas or other minerals was ever produced from either tract.

In 2016, Jason Oil Company, LLC (Jason Oil) filed its amended petition to quiet title to both tracts, claiming to hold valid and subsisting oil and gas leases. With respect to the Northwest Tract, the petition alleged that Michael L. Stull, Jerilyn Ann Stull, and Craig A. Stull—successors to the interests of the Myers Grantee—own all of the oil, gas, and other minerals in and under the property. With respect to the East Tract, the petition alleged that F&E Littler, LLC—presumably the successor to the interests of the Littler Grantee—owns all of the oil, gas, and other minerals in and under the property.

Debra Baldwin Burkhart, Susan Baldwin Manes, and James Baldwin and others (Grantor's heirs) answered, claiming an interest in the mineral rights through Frank E. Littler's will, as his grandchildren and great-grandchildren. In a motion for judgment on the pleadings, the Grantor's heirs argued that after the deeds were executed and delivered, Grantor was vested with a fee simple determinable in the mineral rights and the Littler Grantee and Myers Grantee held springing executory interests in the minerals which were subject to and invalidated by the Rule.

Michael Stull, Jerilyn Ann Stull, Craig Stull, Janice Stull, and F&E Littler, LLC, as Grantees' heirs, also answered. They admitted all of the allegations in Jason Oil's amended petition and cross-claimed against all other defendants, alleging that Michael

4

Stull, Jerilyn Ann Stull, and Craig Stull owned the Northwest Tract minerals as successors to the Myers Grantee and that F&E Littler, LLC owned the East Tract minerals as successors to the Littler Grantee. Alternatively, Grantees' heirs asserted that if the court determined the future interest in minerals conveyed by Grantor violated the Rule, the interests should be reformed under the Uniform Statutory Rule Against Perpetuities (USRAP) specifically under K.S.A. 59-3405(b) to conform with the intent of the parties and avoid violating the Rule.

The Grantor's heirs filed a motion for summary judgment seeking a ruling that the future interests in minerals created in the deeds are springing executory interests that are void under the Rule; that USRAP, including K.S.A. 59-3405(b), is void for violating Article II, § 16 of the Kansas Constitution because it was passed in a bill containing more than one subject; and that ownership of the minerals lying in and under both Tracts passed with the residue of Frank E. Littler's estate as stated in the Journal Entry of Final Settlement of the probate case.

The district court granted the Grantees' heirs' contested motion for bifurcation, ruling that the court would not determine whether USRAP violated Article II, § 16 of the Kansas Constitution until it determined the threshold issue of whether the mineral interests violated the Rule.

The Grantees' heirs and Jason Oil responded in opposition to the Grantor's heirs' motion for summary judgment. The Grantees' heirs filed their own summary judgment motion.

On May 31, 2017, the district court denied the Grantor's heirs' motion and granted summary judgment to the Grantees' heirs. The district court noted that "[t]here is no serious dispute that Frank E. Littler [Grantor] conveyed all of his interest in the subject

5

properties to the respective grantees, subject only to the grantor's express reservation, excepting and saving a term mineral interest." The court found that when construing deeds, all other rules are subordinate to the intention of the grantor and Frank E. Littler's intention "could not be clearer than stated." With respect to classifying the mineral interests, the court found:

> "Frank E. Littler granted less than the entire interest in the subject real estate and created a defeasible estate by reservation. The defeasible term mineral interest in each deed is a future estate reserved to the grantor and a reversion. A reversion remaining in the grantor is not subject to the [Rule]."

The district court also considered the public policy underlying the Rule and found that Grantor's reservation had not restricted alienation of the surface and mineral estates of the real property in question.

The Grantors' heirs filed a motion to alter or amend the judgment requesting that the district court change its analysis to focus on the future interest created in the grantees and hold the Rule applied to the grantees' interests. If the court continued to rule for the Grantees' heirs, the Grantor's heirs requested an order quieting title in the Grantees' heirs to ensure the judgment was a final appealable order. The district court granted the request to quiet title but denied the remainder of the motion to alter or amend. After the Journal Entry of Judgment Quieting Title was filed, the Grantor's heirs timely appealed to the Court of Appeals.

This court granted the Grantor's heirs' motion to transfer the appeal from the Court of Appeals and granted motions to file amicus curiae briefs on behalf of the Kansas Independent Oil & Gas Association (KIOGA), the Eastern Kansas Oil & Gas Association (EKOGA), and the Wichita Association of Petroleum Landmen (WAPL).

6

THE APPLICABILITY OF THE COMMON-LAW RULE AGAINST PERPETUITIES

We are asked to decide a question of first impression in this state that carries the potential of voiding innumerable transfers of mineral interests and creating marketable title problems of epic proportions. Does the common practice of reserving a term interest in minerals that continues so long as minerals are produced create a springing executory interest that must be invalidated by the Rule?

*Standard of Review*

This court has unlimited review for two reasons. First, the parties agree that the material facts are uncontroverted; therefore, this court reviews the district court's summary judgment decision de novo. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 890, 259 P.3d 676 (2011).

Second, "[t]he interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review." *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1207, 308 P.3d 1238 (2013); see also *Rucker v. DeLay*, 295 Kan. 826, 830, 289 P.3d 1166 (2012) (in case decided based on documents and stipulated facts, appellate court has de novo review over whether royalty interest is void under the rule against perpetuities); *Central National Resources v. Davis Operating Co.*, 288 Kan. 234, 240, 201 P.3d 680 (2009) (legal effect of coal deed is a question of law subject to unlimited review).

*Analysis*

We begin by discussing the Rule. It "'precludes the creation of any future interest in property which does not necessarily vest within twenty-one [21] years after a life or lives presently in being, plus the period of gestation, where gestation is, in fact, taking place.'" *Rucker*, 295 Kan. at 831 (quoting *Singer Company v. Makad, Inc.*, 213 Kan. 725, 728-29, 518 P.2d 493 [1973]). In the context of a decedent's estate, we opined: "The test for determining whether an interest violates the rule is simple: Can a hypothetical case be posed, based upon the facts as they existed at the date of the testator's death, in which the interest will vest later than lives in being and 21 years?" *In re Estate of Freeman*, 195 Kan. 190, 196, 404 P.2d 222 (1965). This court has also explained, "[w]here the twenty-one [21] year period has no reference to a life or lives in being, it has been said to be in gross, and the devise or grant is not too remote if the contingency must happen within that time." *Singer*, 213 Kan. at 729.

In Kansas, the Rule "began as a creation of common law." *Rucker*, 295 Kan. at 830. In 1992, the Kansas Legislature "codified and somewhat modified" the Rule by adopting USRAP, K.S.A. 59-3401 et seq. 295 Kan. at 830. USRAP supersedes the Rule; however, this statutory modification applies only to nonvested property interests "created on or after the effective date of this act." K.S.A. 59-3405(a); see also *Gore v. Beren*, 254 Kan. 418, 429, 867 P.2d 330 (1994) (holding USRAP did not apply to property interest created in 1962). So USRAP's modification of the Rule does not apply to the property interests the deeds created in 1967. Therefore, we must determine whether the common-law Rule applies in this case. See K.S.A. 77-109 ("The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state.").

8

The Grantor's heirs first argue the district court erred when it analyzed whether the present interests the Grantor kept violated the Rule. They assert that the district court should have analyzed the future interests Grantor conveyed to the Grantees. We agree with the Grantor's heirs on this point.

The district court's decision contained the following conclusions classifying the interests:

"1.  Frank E. Littler, as the grantor in each deed, reserved a defeasible term mineral interest.

"2.  The future estate *kept by Littler* in the mineral interest of the subject property was a reversion.

. . . .

"5.  The *reservation* of the defeasible term mineral interest *by Frank E. Littler* was a reversion, and was not subject to the [Rule]." (Emphases added.)

With regard to conclusion number 1, the district court's finding that Grantor's mineral interest was a "defeasible term mineral interest" is accurate under Kansas law, albeit Kansas courts have not addressed such a classification issue in the context of a Rule violation challenge. See *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 437, 617 P.2d 1255 (1980) (describing a tract "subject to a *defeasible term* one-fourth *mineral interest* of the [grantor] created in a single instrument for a primary term of twenty years . . . and so long thereafter." [Emphases added.]); see also *Dewell v. Federal Land Bank*, 191 Kan. 258, 260, 380 P.2d 379 (1963) ("This court has held in a long line of decisions that the conveyance or reservation of minerals in place by deed for a primary term and so long thereafter as oil or gas is produced or the premises are being developed

9

creates a base or determinable fee."), *overruled on other grounds by Classen*, 228 Kan. 426; *Wilson v. Holm*, 164 Kan. 229, 234-35, 188 P.2d 899 (1948) ("[I]n this state a deed, conveying oil and gas in place for a fixed term of years and so long thereafter as either or both are produced in paying quantities, creates a base or determinable fee and that title to the estate so created vests immediately upon the execution and delivery of such an instrument but remains defeasible in the event of cessation of production."); Williams & Meyers, Manual of Oil and Gas Terms, 272 (17th ed. 2018) (defining "defeasible-term interest" as "[a] mineral, royalty or nonexecutive mineral interest for a fixed term of years and for an indefinite period of time thereafter, usually so long as oil or gas is produced").

In its conclusions 2 and 5, the district court veered off course. The defeasible term mineral interest Grantor kept was a present interest. Compare 3 Restatement (Third) of Property § 24.1 (2011) ("A present interest is an ownership interest in property that entitles the owner to possession or enjoyment of the property."), with 3 Restatement (Third) of Property § 25.1 (2011) ("A future interest is an ownership interest in property that does not currently entitle the owner to possession or enjoyment of the property. The owner's right to possession or enjoyment is postponed until some time in the future and may be contingent or vested."). Before the conveyances, Grantor owned the mineral interests outright and possessed all of the incidents of ownership; he had a vested interest in the minerals. After the conveyances, Grantor possessed the same incidents of ownership; those incidents could be presently enjoyed or exercised, i.e., his interest in the minerals *remained* vested after the conveyances and for at least 20 years.

In classifying the defeasible term mineral interest as a future interest, the district court relied on *Rucker*. But that case dealt with a *royalty* interest, which is not analogous to the *mineral* interest at issue here. A royalty interest is personal property, whereas a mineral interest is real property. *Rucker*, 295 Kan. at 830; see also *Oxy USA v. Red Wing Oil*, 309 Kan. 1022, 1025-27, 442 P.3d 504, 507-08 (2019) (misappropriation of a royalty

10

is not adverse possession of the minerals in place because a royalty is mere personal property while minerals in place remain real property); *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 130-31, 368 P.2d 19 (1962) ("The term 'mineral interest' means an interest in and to oil and gas in and under the land and constitutes present ownership of an interest in real property."). Moreover, we have caselaw holding that a royalty interest created in a transferee is a future interest that vests at production. *Rucker*, 295 Kan. at 835-36. Nevertheless, the district court was correct in holding that the Rule did not apply to Grantor's excepted interest, albeit for a different reason. The interest was not a reversion, but rather it was a present, vested interest to which the Rule is simply inapplicable.

The future interest created by the deeds that the district court should have focused on is the interest in the minerals that passed to the Grantees. That interest is the right for the Grantees to have full possession and use of the mineral interest following the expiration or termination of the Grantor's reserved defeasible term interest. By the terms of the reservation, the earliest vesting of Grantees' future interest was December 30, 1987, the end of the 20-year term. But because the Grantor retained the possession and use of the mineral interest in each tract for so long after December 30, 1987, that minerals were being produced from the respective tract, the actual date upon which the future interests would vest in Grantees could not have been ascertained when the deeds were executed, i.e., when the future interests were created. At that time, the possibility existed that oil or gas could be discovered underlying either or both tracts and that the tracts would continue to produce minerals for more than 21 years after the death of the last of the Grantor's heirs or Grantees' heirs who were alive on December 30, 1967. In other words, the future interest would violate the Rule. Our task, then, is to determine whether the Rule should be applied to this type of future interest.

11

The Grantor's heirs acknowledge that this case presents an issue of first impression as it relates to this particular reserved defeasible term mineral interest, notwithstanding that such reservations have been commonly used in this state for a long time. But they nevertheless rely on the doctrine of stare decisis, contending that our caselaw applying the Rule to future interests in other contexts mandates a reversal. Moreover, they argue the Rule must be applied to avoid uncertainty and confusion in the area of real estate titles. Specifically, the Grantor's heirs assert that the Grantees' future interest should be labeled either a springing executory interest or a contingent remainder, both of which are void under the Rule. See *Trustees of Endowment Fund of Hoffman Memorial Hosp. Ass'n. v. Kring*, 225 Kan. 499, 502, 592 P.2d 438 (1979) ("An executory interest is not a vested estate and is subject to the rule against perpetuities."); *McEwen v. Enoch*, 167 Kan. 119, 122, 204 P.2d 736 (1949) ("The distinction between vested and contingent interests is of great importance as concerns the rule against perpetuities, for a true *vested* interest is never obnoxious to the rule, while a *contingent* interest not only may be, but often is.").

The Grantor's heirs primarily rely on *Beverlin v. First National Bank*, 151 Kan. 307, 98 P.2d 200 (1940), a case holding that a contingent class gift to the testator's grandchildren violated the Rule. The testator gave one-third of his property to each of his two daughters but to be held in trust until they reached 40 years of age. If a daughter reached age 40, her interest became indefeasible and an absolute legal interest. But if a daughter died before she attained age 40, then her property divested, and if she had children, the testator's grandchildren who attained age 25 received the gift. This court held that the executory devise to the grandchildren was a class gift to a group capable of future change in number; therefore, it violated the Rule because it could possibly vest too remotely. 151 Kan. at 310-12.

12

The Grantor's heirs also point to *Kring*, where a trust provided a present interest for the benefit of a hospital's maintenance. Should the hospital cease to be operated as a hospital, the fund became the property of a third party or his heirs. This court held the gift over to the third party or his heirs violated the Rule. The court reasoned the gift over appeared to be an executory interest, but if it was not an executory interest, it was a contingent remainder, and both interests were subject to the Rule. *Kring*, 225 Kan. 502-03.

*Beverlin* and *Kring* provide some support for the Grantor's heirs' arguments under traditional property law classifications. But as the Grantees' heirs argue, *Beverlin* and *Kring* addressed far different property interests created in a different manner than the future interest created by the Grantor's reservation at issue in this case. No Kansas case has addressed whether to apply the Rule to a grantee's future interest in minerals following the grantor's reservation of a defeasible term mineral interest. Given that the Rule is a creature of common law and we have no binding precedent, we are free to decide whether the Rule should apply in this context.

The Grantees' heirs contend that property scholars and courts are moving away from the traditional classifications of future interests; therefore, this court should not feel compelled to classify their future interest as an executory interest subject to the Rule. Rather, they ask us to join the modern trend tempering the Rule, and, if the future interest must be classified at all, it should be designated as a reversion, possibility of reverter, or a vested interest not subject to the Rule. See *Rucker*, 295 Kan. at 832 (vested remainders and reversions are not subject to the Rule); *Kring*, 225 Kan. at 502 ("It is universally agreed that the possibility of reverter is not within the rule.").

As the Grantees' heirs point out, out-of-state authority addressing this issue has overwhelmingly declined to apply the Rule to void similar future interests, utilizing a

13

variety of property law classifications and policy rationales. See, e.g., *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 873 (Tex. 2018) ("[I]n this oil and gas context, where a defeasible term interest is created by reservation, leaving an executory interest that is certain to vest in an ascertainable grantee, the Rule does not invalidate the grantee's future interest."); *Williams v. Watt*, 668 P.2d 620, 632-33 (Wyo. 1983) (holding that under the unique characteristics of mineral interests, an excepted and reserved defeasible term-plus-production mineral interest could be treated as a life estate that was certain to pass automatically to the grantee upon the "demise" of the prior mineral estate); *Earle v. International Paper Co.*, 429 So. 2d 989, 994-95 (Ala. 1983) (applying a fictitious two-grant theory to classify a defeasible term-plus-production mineral interest excepted and reserved in the grantor as creating a reservation through an implied regrant from the grantee to the grantor); *Bagby v. Bredthauer*, 627 S.W.2d 190, 194-96 (Tex. App. 1981); (applying a fictitious two-grant theory to classify an interest excepting and reserving a term-plus-production defeasible term royalty interest [an interest in land under Texas law] in the grantor as if the grantor had conveyed his entire royalty interest to the grantee and then had the grantee convey the same back to the grantor). Compare *Rousselot v. Spanier*, 60 Cal. App. 3d 238, 241, 131 Cal. Rptr. 438 (1976) (holding deed excepting and reserving term-plus-production mineral interest created a profit à pendre, an interest in real property in the nature of an incorporeal hereditament, "'essentially indistinguishable from [an] easement[]'" and not subject to the Rule), with *Victory Oil Co. v. Hancock Oil Co.*, 125 Cal. App. 2d 222, 224, 230-36, 270 P.2d 604 (1954) (noting a deed excepting and reserving minerals for a period of five years, and "'in the event'" minerals were found within the 5-year period, continuing for 20-years-plus production, was void under the Rule; additionally noting there was production on the land in the secondary term).

The Grantees' heirs acknowledge that some of those foreign cases ignore, or change, well-established labels historically applied to future interests in real property and

14

that some of the cases employ contrived theories. But they argue that we should follow suit because of the practical implications for mineral ownership and the chaotic impact on the oil and gas industry that would occur if the Rule were applied to these types of transactions. For example, pointing to *Earle* and *Bagby*, the Grantees' heirs argue that it is absurd to hold that the deeds here violate the Rule because each future interest was conveyed using only one instrument when the grantor and grantee clearly could have accomplished the same end result without implicating the Rule if they had utilized two instruments:  a grant of all interests and a regrant of the term mineral interest.

The Grantor's heirs do not dispute that structuring the transaction as a double conveyance would have avoided the creation of a Rule violation. Nevertheless, they insist we must apply the Rule to the actual instruments that were utilized here, and those instruments created future interests that are void under the Rule.

The Grantor's heirs also quibble that the deeds created an exception—not a reservation—of the defeasible term interest. Given the obvious intent of the parties, as corroborated by the district court's findings, we decline to drill down into the traditional property law distinction between exceptions and reservations. See *Earle*, 429 So. 2d at 993 ("'[C]ourts construe a reservation as an exception, and vice versa, in order to give effect to the obvious intention of the parties.'").

Further, we decline the invitation to adulterate the traditional, and long-standing, definition of the future interest in realty that was created by the deeds' language. Likewise, we decline the invitation to employ a legal fiction, such as the grant and a regrant theory. Rather, we will construe the deeds that were actually used, not those that could have been used. Under that straightforward methodology, we determine that the deeds created in the Grantees a springing executory interest. If the Grantees' heirs are to receive what the original parties to the deed obviously intended the Grantees to have, it

15

will be because this court carves out a narrow exception to the common-law rule against perpetuities in this state, making the Rule inapplicable to a reserved (or excepted) defeasible term mineral interest of the kind presented here.

In making the determination of whether to make this narrow exception to the common-law Rule, it is helpful to take a look at our prior statements about the purpose of having the Rule:

> "The policy considerations behind the rule against perpetuities are clear.
>
> > "'The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil.' *First Nat'l Bank & Trust Co. v. Sidwell Corp.,* 234 Kan. 867, Syl. ¶ 8, 678 P.2d 118 (1984).
>
> "The rule was first developed 'to prevent the practice of tying up family property for generations and thereby creating unreasonable restraints upon the alienation of property.' *Barnhart*, 235 Kan. at 517." *Gore*, 254 Kan. at 428-29.

See also *In re Estate of Woods*, 181 Kan. 271, 280, 311 P.2d 359 (1957) ("Broadly stated, the rule against perpetuities is grounded traditionally on a farsighted public policy which frowns on the total exclusion of property from commerce for long periods of time and is supported by the practical needs of modern times."); *Freeman*, 195 Kan. at 200 ("[T]he purpose of the rule against perpetuities . . . is to keep property alienable within the reasonable limits fixed by the rule."). Cf. *Singer*, 213 Kan. 725, Syl. ¶ 2 ("The modern

16

tendency is to temper the rule if possible where its harsh application would obstruct or do violence to an intended scheme of property disposition.").

With respect to the purpose behind the Rule, the Grantor's heirs assert that "Kansas courts seem to have missed the nature of the Rule's origin, though there is still time to right the ship." They contend that the Rule is designed to accomplish three related objectives: (1) balancing the rights of the current owner and future owner; (2) contributing to the utilization of wealth in society; and (3) ensuring property can be used to meet the urgent needs of its current owners. But in their view, modern courts have improperly synthesized these considerations into a policy of ensuring property is alienable. They argue that courts should instead focus on ensuring the present interest holder may enjoy all of the rights attendant to that interest. Ultimately, the Grantor's heirs insist that the Rule must be applied "remorselessly," without regard to whether the property at issue is alienable and without regard to the grantor's intent.

Apparently, when it comes to the public policy behind our common law, the Grantor's heirs are no longer enamored with the principle of stare decisis. As the Grantees' heirs counter, Kansas courts have clearly adopted alienability of property as an overarching policy for the Rule's continued application in this state. We see no reason to depart from that precedent.

Our next step, then, is to assess how applying the Rule in this circumstance would comport with the policy behind the Rule. The Grantees' heirs contend that expanding the Rule to void the future interest following the reserved defeasible term mineral interest in this case serves no valid purpose or public policy, but rather it would be a nonsensical act of legal formalism. They point out that this court has previously rejected the "remorseless" approach the Grantor's heirs ask this court to apply. Cf. *Freeman*, 195 Kan. at 200 (holding that valid parts of will could stand despite invalidity of certain devises

under the Rule and stating "[t]his court has never adhered to the classical view of 'remorseless' construction developed in England"). They contend, and we agree, that the application of the Rule in this case would actually impede the alienability of the land.

Applying the Rule in this case would result in the Grantor's heirs holding the mineral interests in the real estate in perpetuity. One would presume that the number of owners of that interest would increase over time, as heirs beget more heirs. Moreover, the possessors of the subsurface mineral interest are not as readily ascertainable as the occupiers of the surface interest. Thus, a person wanting to purchase the entirety of the tracts would have to go way beyond locating and negotiating with the possessors of the surface interest. Such prospective purchaser would have to locate all of the grantor's heirs and negotiate with each one for the purchase of his or her respective interest in the minerals in order to reunite the mineral interest with the surface interest. Other courts have pointed out that applying the Rule to prevent the reuniting of split mineral interests would actually "frustrate the policies behind the rule." *Earle*, 429 So. 2d at 995. The same frustration is caused by voiding the deed provisions in this case that actually provide for the reunification of the surface and mineral interest.

We do not stand alone in believing that a straightforward exempting of reserved defeasible term mineral interests from the remorseless application of the Rule does more good than harm. For instance, the Williams & Myers treatise opines:

"[D]efeasible term interests serve a useful social purpose, whether reserved or granted. The term interest, as compared with a perpetual interest, tends to remove title complications when the land is no longer productive of oil or gas. This simplification of title promotes alienability of land, which is one purpose served by the Rule against Perpetuities. We believe, therefore, that the courts should simply exempt interests following granted or reserved defeasible term interests from the Rule, on the straight-forward basis that they serve social and commercial convenience and do not offend the

18

policy of the Rule Against Perpetuities." 2 Williams & Meyers, Oil and Gas Law, § 335 (2018).

Recently, the Texas Supreme Court relied in part on the Williams & Meyers treatise's straightforward rationale when declining to apply the Rule to a similar interest under Texas law, reasoning "restraint on alienability and promoting the productivity of land is not at issue in the oil and gas context." *Koopmann*, 547 S.W.3d at 869. The concurrence in *Williams* also supported this rationale. *Williams*, 668 P.2d at 638 (Thomas, J., concurring) ("Essentially Williams and Meyers . . . is advocating the application to this situation of the maxim that when the reason upon which a rule is justified is not present the rule should not be invoked."). While we adopt the approach from Williams & Meyers, we note that other learned treatises likewise recognize that the policy behind the Rule is not furthered in this context. See Anderson et al., Hemingway Oil and Gas Law and Taxation, § 2.8(B) (4th ed. 2004) ("Rather than misapply common law rules relating to future interests, a better judicial approach would be to treat the interests resulting from conveyances of terminable [mineral] rights in oil and gas as *sui generis* and fashion a rule of construction related to the realities of such transactions."); 1 Kuntz, Law of Oil & Gas, § 17.3 (1987) ("The application of the rule against perpetuities to the interest following a retained term mineral interest is easily overlooked, probably because the evil designed to be avoided by the rule is not readily apparent if it is present at all.").

The Grantees' heirs and the Amici Curiae additionally argue that these transactions are common in the oil and gas industry and application of the Rule will impact many other property owners who received their interest from similarly worded deeds. We recognize that the undisputed facts relied upon by the district court did not address this contention. But as KIOGA points out, Kansas caselaw provides multiple examples of these transactions, and we cannot ignore that reality. See *Kneller v. Federal Land Bank of*

19

*Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990) (deed grantor, Federal Land Bank, excepted and reserved one-half defeasible term-plus-production mineral interest); *Classen*, 228 Kan. at 427 (deed grantor, Federal Land Bank, excepted and reserved one-fourth defeasible term-plus-production mineral interest); *Friesen v. Federal Land Bank of Wichita*, 227 Kan. 522, 522-23, 608 P.2d 915 (1980) (deed grantor, Federal Land Bank, excepted and reserved one-fourth defeasible term-plus-production mineral interest), *overruled on other grounds by Classen*, 228 Kan. 426 (1980); *Shepard*, 189 Kan. at 126-27 (deed grantor, John Hancock Mutual Life Insurance, excepted and reserved one-fourth defeasible term-plus-production mineral interest); *Dewell*, 191 Kan. at 258 (deed grantor, Federal Land Bank, excepted and reserved one-half defeasible term-plus-production mineral interest); see also *Oxy USA*, 309 Kan. at 1023, (grantor reserved one-half defeasible term-plus-production mineral interest); *Stratmann v. Stratmann*, 204 Kan. 658, 663, 465 P.2d 938 (1970) ("A mineral interest may . . . be reserved for a period so long as production from the land continues."), *overruled on other grounds by Classen*, 228 Kan. 426 (1980); *Brooks v. Mull*, 147 Kan. 740, 741, 78 P.2d 879 (1938) (grantor reserved one-half defeasible term-plus-production mineral interest). The commonality of these transactions is likewise apparent in rulings from our sister states and in treatises discussing this issue. See, e.g., *Williams*, 668 P.2d at 630 ("Many cases simply assume the validity of these interests without any discussion of the rule against perpetuities."); 1 Kuntz, § 17.3 ("In many reported cases, the presence of the [Rule] problem has gone unnoticed, and the apparent assumption has been made that the interest is valid.").

Our precedent makes clear that the policies behind the common-law Rule include promoting the alienability of property. The practice of retaining a defeasible term-plus-production interest in minerals is ingrained in the oil and gas industry and actually promotes the alienability of land. Applying the Rule here would be counterproductive to the purpose behind the Rule and create chaos. Therefore, we hold that where a grantor creates a defeasible term-plus-production mineral interest by exception, leaving a future

interest in an ascertainable grantee, the future interest in minerals is not subject to the Rule.

As previously indicated, in the district court, the Grantees' heirs alternatively pled that if the district court found a Rule violation, the deeds should be reformed under K.S.A. 59-3405(b), which applies retroactively. Because we hold that the interests at issue are exempt from the Rule, we need not address the statutory reformation remedy.

We hold that the Rule does not apply in this circumstance; therefore, we affirm the district court's grant of summary judgment to the Grantees' heirs and order quieting title to the Tracts.

Affirmed.